## AUSTELL *v.* HUMPHRIES.

S. being indebted to H. agreed with him in parol that H. should to the extent of the indebtedness of S. to H. have "an interest" in certain promissory notes which S. held on a third person. Subsequently S. delivered these notes to A. for use by the latter in raising money, with an understanding that H. was to be paid out of their proceeds; but there was no contract or agreement of any kind between A. and H.  A. raised money on the notes but did not pay any portion of the same to H., though he afterwards promised H. in parol to pay H. the debt due him by S. *Held:*

1. That H. had no such title, legal or equitable, to the notes in question as would have authorized him to bring an action against S. for any portion of the notes or their proceeds.

2. That H. could not recover from A. any portion of the proceeds of the notes, because the latter, before receiving and realizing upon the notes, had made no contract with H. to pay him anything, and the promise made afterwards was merely gratuitous, without legal consideration, and in law amounted to nothing more than a parol promise to pay the debt of another.

May 11, 1896.  Argued at the last term.

Complaint.  Before Judge Gober.  Cobb superior court.  March term, 1895.

Humphries sued Austell and Scott, alleging that they were indebted to him $2,899.26, with interest and attorney's fees, on account of the following facts:   In 1890 or 1891, the Austell Lithia Springs & Land Co. was duly incorporated with a capital stock of $32,000, of which T. G. Healey owned to the amount of $14,000; J. A. Scott, $3,500; petitioner, $8,200; M. R. Berry, $6,000, and N. A. Moss (now deceased), $1,200.  The corporation owned a hotel and spring and other valuable property.  Much money was paid out in improvements, etc., and Healey claimed to have advanced for petitioner $2,899.26 therefor,

and petitioner made to him his promissory note, July 2,
1890, for $3,279.06.   On the same date a credit was en-
tered on the note for $379.80, because it was found that
Healey had not advanced the amount of the note by said
$379.80, leaving the amount due to Healey the amount
first above stated.   The note was payable two years after
date to Healey or order, with interest at eight per cent.
per annum, and with a stipulation for attorney's fees.
When this note was given, petitioner made a mortgage to
a house and lot in the town of Austell and on his interest
in said company, to secure the note.   On January 8, 1892,
he paid Healey on the note $140, and this is the only pay-
ment he has made thereon in money.   J. A. Scott was
anxious to buy the interest of all parties in the company,
and petitioner, being involved and owing said debt, agreed
with Scott in the fall of 1892 that he would sell his inter-
est in the company to Scott, or to any one to whom Scott
might wish him to sell, provided Scott would assume and
pay to Healey the debt petitioner owed to Healey.   Peti-
tioner did sell to Scott his entire interest in the company,
the consideration to be paid being the amount of the debt
petitioner then owed to Healey, and at the same time Scott
bought the interest of other parties in the company; and
petitioner authorized the president of the company to make
deeds to his entire interest in the property to Scott, or
to such person as Scott might direct, Scott agreeing, in
consideration of said interest thus sold him by petitioner,
to assume and pay the debt due by petitioner to Healey.
After the deed was made to Scott to all the said property,
Scott sold a half undivided interest therein to J. F. Walker
for $10,000 in good notes well secured.   It was distinctly
understood and agreed between petitioner and Scott, that
the interest petitioner conveyed to Scott was reconveyed
by Scott to Walker, and that the notes or part of notes
equivalent to the debt due by petitioner to Healey, from
Walker to Scott, were to be good for the amount of peti-

tioner's debt to Healey. The sale by Scott to Walker was in November, 1892, and Scott delivered $2,200 of the $10,000 notes given him for the purchase-money, to Berry, to pay for the interest Berry had conveyed in the property to Scott; the balance of the notes, which were secured by mortgage, were held by Scott for the purpose of paying himself for his interest which he had conveyed to Walker, and to pay for the interest petitioner had conveyed to Scott, which Scott had reconveyed to Walker. Austell knew all about the transaction above set forth, knew what interest petitioner had in the property, how petitioner came to sell it to Scott and for what consideration, how Scott came to sell to Walker, and what was the consideration for the notes given by Walker, knew especially that petitioner had an interest in the notes equal to the amount he owed Healey; and Austell gave a receipt to Scott for the notes, specifying in the receipt for what purpose they were held and that the debt owed by petitioner to Healey was to be paid out of the proceeds of the notes. In 1892 Scott and Austell were in business and became involved on account of losses made by their partner, said Moss. It became necessary for them to raise money to carry on their business and meet their obligations. In the summer of 1893, both knowing that the notes for $7,800 given by Walker and then in the possession of Austell were notes in which petitioner was interested and that he was entitled to have the proceeds thereof applied in the payment of his debt to Healey, notwithstanding this, took said notes and appropriated them to themselves, negotiating and borrowing money on them to the extent of $7,800, which they used for their own benefit. They notified petitioner of this. They had both agreed and acknowledged that previous to this time Scott had become liable to pay the debt due by petitioner to Healey, but now inasmuch as they had appropriated the notes as above stated, in consideration of petitioner allowing this to be done, they

jointly and severally then and there agreed to assume to pay petitioner the amount due by him to Healey. Petitioner believed in the solvency of Austell and in the financial ability and standing of Scott, and thought he had ample security. By reason of the above, Austell and Scott then and there became liable to petitioner for the sum of the Healey note besides the interest. Petitioner thought and understood that in pursuance of their agreement Austell and Scott had settled the Healey debt, but finds that they have only paid thereon $363.24, which was paid December 1, 1892. They received enough of petitioner's funds to have paid said debt and agreed to do it, as above set out, but have failed to do so and have allowed petitioner to be sued by Healey upon the note, the suit being now pending and the amount claimed therein being $3,279.06, with interest and attorney's fees. Wherefore and because of the facts above stated, he brings suit against them for said amount.

Austell answered, denying that he knew of the previous transaction between petitioner, Scott and Walker, and denying that he knew of petitioner's interest in the notes and that he gave the receipt to Scott for the notes, as alleged. He further answered: On July 18, 1894, Moss, Scott and himself bought the interest of Healey in the Lithia Springs & Land Company, giving Healey their joint note for $5,000 due three years after date, with interest, etc. They afterwards sold their interest in said company to Scott for $5,000, and he sold the property for some $10,000 to Walker, and took notes therefor payable to himself. Scott and Moss were insolvent, and this defendant and Scott took the notes, indorsed them and drew the money on them. It is true that defendants Moss and Scott were in business and that Moss had lost the firm about $30,000. Also, that defendant and Scott took the money they drew on the notes and paid it on debts of N. A. Moss & Company. $5,000 of this money defendant

had a right to take and place on said debts, because he would have the $5,000 note now due Healey to pay; and Scott took the balance of the money raised on the Walker note, $2,500, and applied as a portion of his part of the debts of Moss & Co. Petitioner had no interest in said notes. Defendant never notified petitioner that they had negotiated the notes and used them to get money on them, nor did he ever agree to become liable to petitioner for any sum, nor did he ever agree to pay petitioner the amount petitioner was due Healey, nor to assume any debt petitioner owed Healey, nor did he ever appropriate any money or property of petitioner to his use, nor is he liable to petitioner in any sum. It is not true that petitioner thought his note to Healey was paid, but petitioner was confident that Walker was bound to pay this debt to Healey, under a contract made by Scott with Walker, and petitioner did not claim that defendant was liable to him for the debt, until he went to Scott a few days before the filing of this suit and asked him for the contract in which Walker had assumed their debt to Healey, and to petitioner's great surprise Scott informed him that he had sold the property to Walker, had taken the notes in his own name, and had indorsed them and got the money on them. It is not true that defendant has paid anything on the note due by petitioner to Healey, nor that he has received enough of the effects of petitioner to pay said note or any part of it.

There was a verdict for plaintiff for $2,955.89, with interest and attorney's fees. Austell moved for a new trial, which was denied, and he excepted.

Beside the grounds that the verdict was contrary to law and evidence, the motion alleges error in refusing to give the following in charge as requested: (*a*) "If Austell agreed with Scott that he, individually or with Scott, would pay the debt that Humphries owed to Healey, and Humphries was not a party to this agreement, he, Humphries, cannot sue on that agreement, although you believe they

or either of them told Humphries that they had made such an agreement."  (b) "If Austell, after he had transferred the written notes to Swann and got the money on them, promised Humphries that he would pay the Healey debt, this promise would be void for want of a consideration." (c) "Humphries sues Austell and Scott on a joint and several promise that they had made him to pay the Healey debt. If the testimony shows that Scott and Austell did not at the same time make a joint and several promise to pay the Healey debt, that Scott promised at one time and Austell at another time to pay the Healey debt, this would not authorize you to find for the plaintiff in this case." (d) "The plaintiff claims that when Scott sold an interest in the Austell Lithia Springs & Land Company to Walker and took Walker's notes for $10,000 in payment of the same, that it was distinctly understood that said notes, or part of notes equivalent to the debt due by Humphries to Healey, was to be good for the amount of Humphries' debt to Healey. If the possession of these notes was not given to Humphries by Scott or no transfer in writing was made by Scott to Humphries, then Humphries acquired no interest in said notes."  (e) "Scott could not transfer to Humphries any interest in a part of the note or notes given by Walker to Scott. A transfer of a part of a chose in action would be void."  (f) "If Austell promised Scott that he would, individually or with Scott, pay a debt that Humphries owed to Healey, that promise would be void unless it was in writing."

Also, that the entire charge of the court was a misapprehension of the plaintiff's suit as set out in the declaration; said suit being upon an express contract by Austell and Scott to pay debt which the plaintiff owed to Healey, and the charge of the court ignoring this contract and authorizing the jury to find for plaintiff, if the defendants appropriated to their own use certain notes given by one Walker to the defendant Scott, provided they should

believe that Humphries had an interest in these notes and the defendant knew of that interest before appropriating said notes or the proceeds thereof.

Also, error in charging: "Now, it has been insisted that this undertaking on the part of Austell and Scott would be void because it was not in writing; and the plaintiff, on the other side, insists that the rule does not obtain by reason of these facts. I charge you, if Austell and Scott took the notes with notice of Humphries' interest in them, and they got the money on them, used the proceeds of them, I charge you they would be responsible to Humphries for the amount of his interest in the notes." Movant contends that this charge was error, because the plaintiff did not sue to recover the proceeds of said notes, but sued on the promise of Austell and Scott to pay the Healey debt; and because Humphries had no interest in the said notes, he never having had possession of said notes and no interest ever having been transferred to him in said notes in writing, according to the petition or the testimony in the case.

*J. T. Pendleton* and *Mozley & Morris*, for plaintiff in error.  *Clay & Blair*, contra.

ATKINSON, Justice.

The official report contains a correct synopsis of the original pleadings in the case, and a correct statement of the grounds of the motion for new trial.

Upon the trial it was shown that Scott, one of the defendants, jointly with Humphries, the plaintiff, was interested in certain real estate. Humphries sold his interest in this real estate to Scott, and at the time of sale made an agreement with Scott, that he could appropriate the amount of money due by Scott to Humphries to the payment of a debt due by Humphries to one Healey. To this arrangement Scott assented. He subsequently sold the property to another person, taking his notes therefor, and

agreeing with Humphries that the latter should have an interest in the notes to the extent of the debt due by Humphries to Healey; in other words, that so much of the moneys realized by Scott upon such notes as was necessary to the discharge of the Healey debt should be by Scott so appropriated.    There was no assignment in writing, or otherwise than as above stated, to Humphries by Scott, of any interest in these notes.    Subsequently Scott turned over the notes to Austell, the other defendant, to be by him appropriated to the payment of certain joint obligations due by Scott, Austell and another to other persons, but at the time the notes were delivered to Austell, told him of the prior transaction between himself and Humphries, and upon the agreement that Austell would pay, out of the proceeds of the note, the Healey debt, he assented to the appropriation of the notes by Austell in the manner above indicated.    Subsequent to the delivery of the notes by Scott to Austell, and subsequent to their appropriation by him, Austell promised Humphries to save him harmless as against the Healey debt.    For this latter promise there was no consideration, except in so far as the previous transaction might have been treated as a consideration therefor. The Healey debt was afterwards sued to judgment against Humphries, and he brought this suit against Austell and Scott.    A verdict was rendered in his favor against both. Austell moved for a new trial, and upon his motion being overruled, he excepted.

The question is, is Austell liable to Humphries either in consequence of the breach of his contract made with Scott, or in consequence of his failure and refusal to make good the direct promise to Humphries to save him harmless as against the Healey debt?    The plaintiff declares upon the express promise, joint and several, alleged to have been made by Scott and Austell with him to pay the Healey debt.    Does he establish such a privity between himself and Austell as to authorize a recovery against him?

That there was a sufficient consideration, as between Scott and Austell, to support the latter's promise to pay the Healey debt, there is little room for question. There was ample consideration to support that promise in the delivery by Scott to Austell of these notes for the uses to which they intended they should be applied; but the obligation of Austell's contract with respect to the payment of the Healey debt, as will be seen from the record, was due not to Humphries but to Scott, and the non-performance of that contract, according to the well settled rules of the law, gives no right of action to a person to whom the obligation of the agreement was not due, and in favor of whom the contract imposed upon the promissor no duty. The declaration being upon an express contract, and there having been no contract shown, either express or implied, between Austell and Humphries, Humphries is a mere stranger to the agreement which was actually made, and upon no principle of the law, of which we are advised, can he maintain an action because of its non-performance.

Nor do we think the parol promise of Austell made to Humphries, after the appropriation of the notes by him, was supported by such a consideration as to make it binding. It does not appear that Humphries paid anything to Austell to induce the promise; it does not appear that he parted with any property upon the strength of the promise; that his position was in any manner changed in consequence of the promise. It does not appear that he was induced to do any act, or to forbear the doing of any act, to the advantage of Austell or to his own injury, in consequence of the promise. Therefore, while there might have been behind it the element of a strong moral obligation which should appeal to the conscience of Austell, there was no such consideration as will, in law, authorize the enforcement of the promise as a legal agreement. It was *nudum pactum*, and not capable of being enforced.

Without dealing specifically, then, with each of the

errors assigned upon the charge of the court, and upon the refusal of the court to charge, a new trial is awarded upon the general ground, that the verdict is contrary to law, and ought not to have been permitted to stand.

*Judgment reversed.*