## SHEPPARD v. BRIDGES.

1. Where one person, for a valuable consideration, agrees with another to pay the debts of the latter, under former decisions of this court this alone does not authorize a creditor of the promisee to bring an action at law against the promisor to recover the debt.

(a) It has not been decided that where a debtor conveys his property to another, and as part of the transaction the purchaser agrees to assume and pay the debts of the vendor, the creditor has no remedy in an equitable proceeding, with proper pleadings and parties.

2. Where a member of a firm retired, and a new firm was formed, consisting of his late partner and another, and the new firm agreed to pay to the retiring partner for his interest a certain amount of money and to assume and pay the debts of the old firm, as between the retiring partner and the new firm he was a creditor for the amount of the unpaid purchase-money, and also sustained the relation of a surety in respect of the debts which they had assumed and agreed to pay.

3. If a member of a firm retires, and the remaining partner, or a firm composed of him and another, purchases the interest of the retiring partner and assumes to pay the debts of the old firm, a creditor of the old firm may, in an equitable action to which both the retiring partner and the members of the new firm are parties, enforce the payment of the debt due to him.

4. A member of a firm retired, and the succeeding firm agreed to pay to him a certain amount of money and to assume all the debts of the old firm; and thereafter the new firm took in another partner. This partner later filed an equitable petition to wind up the affairs of the last firm and have properly distributed a fund arising from a fire-insurance policy on the firm property, and alleged that his copartners were insolvent. The partner who had retired from the original firm filed an intervention, alleging, that the purchase-money for his interest had never been paid; that he had been compelled to pay some of the debts which had been assumed by the firm to which he sold; that the firm last formed had taken over the assets of the second firm, and assumed to pay all debts of both the preceding firms; that the partner who filed the petition was seeking to set up claims as a creditor, and had destroyed the evidence of indebtedness by him to the former firms; and that the other partners were insolvent, and the intervenor could only hope to be paid from the fund before the court and by compelling the plaintiff to account with him. He prayed equitable relief. *Held*, that it was error to strike such intervention on the ground that it did not show that the intervenor was entitled to equitable relief, or that there was a misjoinder of parties or causes of action.

(a) The intervention was not demurrable for multifariousness.

FEBRUARY 17, 1912.

Equitable petition, etc. Before Judge Worrill. Early superior court. December 21, 1910.

C. W. Bridges filed an equitable petition against the law firm of Calhoun & Rambo, its individual members, and Mc. L. Parr and

L. W. Parr, which contained, in substance, the following allega- ͵ tions: Prior to November, 1908, a partnership existed between George W. Sheppard and Mc. L. Parr, under the firm name of Sheppard & Parr. On or about November 9, 1908, Sheppard sold his interest in the firm to L. W. Parr, and the partnership became known as Parr & Parr, the new firm assuming the debts of Sheppard & Parr. The firm of Parr & Parr sold a one-third interest in the business to the plaintiff, and a new firm was formed known as Parr, Bridges & Co. Insurance policies were taken in the name of the new firm for $6,000. The stock was thereafter consumed by fire, and the insurance claims turned over to Calhoun & Rambo for collection. They effected a compromise for $3,000, and thereafter held the fund so collected as agents and attorneys for Parr, Bridges & Co., and as a trust fund for the payment of the creditors of that firm. All the members of that firm directed said attorneys to pay out of said fund all its outstanding indebtedness, but said attorneys failed and refused to do so, or to account to petitioner or his co-partners for any part of said insurance fund, their only excuse being that they had been served with a garnishment at the instance of a creditor of the firm of Parr & Parr. Calhoun & Rambo made answer to said garnishment that they had no money or effects in their hands belonging to the firm of Parr & Parr. On account of the refusal of said attorneys to pay the debts of Parr, Bridges & Co. out of said insurance fund, its creditors began to bring suit against the firm on their claims. Two of said creditors obtained judgments and had fi. fas. issued thereon and levied on petitioner's property. Petitioner urged Calhoun & Rambo to pay off said fi. fas.; but notwithstanding the fund in their hands belonging to Parr, Bridges & Co. was largely in excess of the amount of the two judgments and the claim in the garnishment case referred to above, said attorneys refused to do so, and without legal excuse retained said fund in their hands. On this account petitioner was forced to pay off the two fi. fas., with costs, in order to prevent a sale of his property, and he had the fi. fas. transferred to him. He is entitled to have them paid out of said insurance fund, which constitutes the only assets of the firm of Parr, Bridges & Co. The other two members of the firm of Parr, Bridges & Co. are insolvent. Petitioner is informed that other creditors of that firm have reduced their claims to judgment, and that his property will be subjected to levy

and sale thereunder, and he, as the only solvent member of the firm, will be put to great expense and loss unless said creditors are paid out of said insurance fund. By mutual consent of its members, the firm of Parr, Bridges & Co. has gone out of business, and nothing remains but to wind up its affairs with its creditors. Mc. L. Parr and L. W. Parr have no further practical concern with the affairs of the firm, and decline to join petitioner in this suit to compel Calhoun & Rambo to account to the partnership for the insurance money received by them, or to share in the expenses of the litigation. Calhoun & Rambo openly declare that they will not pay out the insurance money held by them in payment of the debts of Parr, Bridges & Co., but it is their avowed purpose to use said fund to subserve the interests of George W. Sheppard, whom they represent as attorneys in an endeavor to collect his demand against the Parrs for the unpaid balance of the purchase-price of the stock of goods sold by him to the firm of Parr & Parr, and in the matter of the assumption by that firm of the debts of Sheppard & Parr. Petitioner charges, on information and belief, that said attorneys have entered into an arrangement, to be immediately carried out, whereby they will turn over to said Sheppard the whole of said insurance fund now in their hands, in order that he may apply it to the debts of Sheppard & Parr, and thus defeat petitioner's right to contribution from his copartners out of said fund, which belongs to Parr, Bridges & Co. After the suspension of the firm of Parr, Bridges & Co., Mc. L. Parr turned over to said attorneys all the notes, accounts, and choses in action belonging to that firm, for collection, and said attorneys refuse to pay any of the proceeds thereof in extinguishment of the debts of said partnership, as directed by its members to do, or to pay over the proceeds to the partnership, but are holding the same for the benefit of Sheppard, and threaten to turn the same over to him in part settlement of his demand against the Parrs. There has been no final accounting between petitioner and his copartners. The petitioner asked: that Calhoun & Rambo, and its members, be enjoined from paying over to Sheppard or any one else, and from making any disposition of, any of the insurance fund in their hands, or any of said choses in action turned over to them for collection; for the appointment of a receiver to take charge of said insurance fund and all other assets of Parr, Bridges & Co., and to wind up its affairs; for an accounting between petitioner

and his copartners, and a decree that he be reimbursed, out of the insurance fund belonging to said partnership, the amounts paid by him in settlement of its judgment debts; that Calhoun & Rambo be held liable to him for the damages he had suffered by reason of their wrongful refusal to pay off said fi. fas., and for reasonable attorney's fees and expenses of the litigation; "that the court will permit all creditors of Parr, Bridges & Co., who are at interest, to intervene in this suit and set up their rights, and will render final decree, winding up the affairs of said partnership and making just and final distribution of all of its assets amongst all persons entitled to share therein;" for general relief, and for process.

Calhoun & Rambo filed an answer, in which, after admitting and denying by number certain paragraphs of the petition, they averred: They had been employed by Mc. L. Parr, representing the firm of Parr, Bridges & Co., to wind up the affairs of the partnership, collect all debts due it, and dispose of the funds so collected in payment of its outstanding indebtedness. With the consent of the firm they settled the claims on the insurance policies turned over to them for $3,000, $2,000 of which they received, the remaining $1,000 being paid by the insurance company to J. W. Calhoun, to whom it was payable, jointly with the assured, under a mortgage clause attached to the policy. One of the policies was issued to Parr, Bridges & Co., and the remaining three to Sheppard & Parr and transferred to Parr, Bridges & Co. They also collected $331.02 on the notes and accounts due the last-named firm. They were instructed by Mc. L. Parr, at the time of their employment, to pay out the first funds collected on the indebtedness of the old firm of Sheppard & Parr. They were also informed that C. W. Bridges was indebted to the firm of Parr & Parr in the sum of $1,200 or $1,250 for the interest in the business he had purchased, besides owing that firm and the firm of Sheppard & Parr on open account, the amount of which is unknown, for the reason that the leaf of the ledger containing said account has been torn from the book. There were debts outstanding against all three firms. Parr & Parr assumed the debts of Sheppard & Parr, as evidenced by a written instrument turned over by George W. Parr to respondents for collection. Parr, Bridges & Co., as a part of the consideration of the purchase-price of the business of Parr & Parr, had assumed the debts of the latter firm, including the debts due by the old firm

of Sheppard & Parr which had been assumed by Parr & Parr. They itemized amounts paid by them under the direction of Mc. L. Parr as the representative of Parr, Bridges & Co., amounting to $1,552.43, the bulk of which was paid in settlement of obligations of the firm of Sheppard & Parr, and the remainder in fees to themselves for services; and averred that they had on hand a balance of $778.59. They were instructed to pay this balance on the debts of Parr, Bridges & Co.; but the same was held up, not only by the garnishment referred to in the original petition (in which their answer had been traversed), but by other garnishments, and these garnishments represented sums sufficient to exhaust the funds in their hands. They have always been ready to account for the funds in their hands, but the time for so doing has not arrived, there being various matters still in their hands, connected with their employment, which were undisposed of. They prayed that the plaintiff be required to. come to an accounting with respect to any sum he might be due to the firms of Sheppard & Parr, Parr & Parr, and Parr, Bridges & Co., and that he be required to pay over the amount of such indebtedness before he be held entitled to any of the funds in their hands.

On May 12, 1910, George W. Sheppard was allowed to file an intervention, wherein he set up the following: He was the real party at interest and claimed the right to have the funds in the hands of Calhoun & Rambo paid over to him. He was a member of the firm of Sheppard & Parr, and sold out to Parr & Parr, they executing to him an instrument in which they promised to pay him $500 on January 1, 1909, in which instrument he retained title to the stock of merchandise in the store; and this debt was unpaid. Subsequently Bridges bought an interest in the business from Parr & Parr, and gave them his note for $1,250, upon which he is still indebted to that firm, although the intervenor is informed that Bridges in some manner procured and destroyed the note. Bridges was indebted to the firm of Sheppard & Parr and to the firm of Parr & Parr on open account, but obtained possession of the ledger containing the account and tore therefrom the page or pages containing the account, for the purpose of defeating its collection. When Bridges bought an interest in the firm of Parr & Parr, "it was agreed between them, as a part of the consideration of said purchase, that the new firm of Parr, Bridges & Co. should assume and

pay off all of the outstanding indebtedness of Parr & Parr, includ-
ing the indebtedness of the original firm of Sheppard & Parr."
Intervenor has been compelled to pay out $826 upon the old debts
of Sheppard & Parr to prevent the sale of his property under execu-
tion; and there are now other levies on his property, which he is
preparing to satisfy by the payment of a sum aggregating $500.
Both the Parrs are insolvent, and he can only expect to be reim-
bursed the amounts paid out by him and collect the balance still
due him upon the purchase-price of his interest in the said busi-
ness from the funds in the hands of Calhoun & Rambo, and by
compelling Bridges to account to him for the amount he is due to
the two Parrs. "Petitioner adopts as a part of the petition so much
of the answer of Calhoun & Rambo in said case as relates to him
and his right to have said fund in their hands, and also the allega-
tions in reference to the insurance policies and their collection."
The prayers are that petitioner be allowed to intervene; that Bridges
be required to come to an accounting in reference to his indebted-
ness to Parr & Parr; that intervenor have a decree directing Cal-
houn & Rambo to pay over to him the fund in their hands; that
Bridges pay to intervenor a sufficiency of his indebtedness to reim-
burse intervenor the amounts he expended on the debts of Shep-
pard & Parr and the amount still due him by Parr & Parr for the
balance of the purchase-price of his interest in the business.

At the October term, 1910, Bridges moved to dismiss the inter-
vention filed by Sheppard, on the following grounds: "1. Said or-
der [the order of the court allowing the intervention filed] is not
binding on plaintiff, the same being an ex parte order passed with-
out notice to him or citation to show cause why the intervention
should not be allowed, and plaintiff has never had his day in court.
2. The petition for intervention shows on its face that there is
no privity of law or of contract between plaintiff and said Shep-
pard, or between Sheppard and the firm of Parr, Bridges & Co.,
and that said intervenor has no cause of action against said part-
nership or petitioner, and is not entitled to any of the relief sought.
3. Said intervention brings about a misjoinder of parties, in that
George W. Sheppard is not a proper party to any of the controversies
between plaintiff and any of the defendants named in his petition.
4. Said intervention brings about a misjoinder of causes of action,
in that the complaints of the said Sheppard can not be legally

joined with the cause of action declared on by plaintiff, or with any of the defenses set up by Calhoun & Rambo. 5. Said intervention renders said suit multifarious, in that plaintiff has no concern with the cause of action which Sheppard alleges against Parr & Parr, nor are Calhoun & Rambo in any way interested therein; and it is not the right of the intervenor to use plaintiff's suit as the means of asserting any individual claims which said Sheppard may have against any of the defendants named in plaintiff's petition. 6. It affirmatively appears from said intervention that said Sheppard is not a creditor of the firm of Parr, Bridges & Co., in any legal sense, and that he has no legal or equitable lien on or interest in the fund in controversy. 7. Neither plaintiff nor the firm of Parr, Bridges & Co. is alleged to be insolvent, and said intervenor does not make it to appear that he is without a complete and adequate remedy at law to assert whatever rights he may have in the premises." The court passed an order sustaining the foregoing motion and dismissing the intervention; to which order Sheppard excepted.

*Hawes & Pottle* and *M. C. Edwards,* for plaintiff in error.
*Glessner & Park,* contra.

LUMPKIN, J. We will first consider a leading question presented, on authorities outside of this State, and then with more special reference to our own statutes and decisions.

Two general rules have grown up on the subject of the enforcement of a contract by a person for whose benefit it was made, though he was not a party to it, known respectively as the English and American rule. In England some of the earlier decisions looked in the direction of allowing a suit by a beneficiary for a breach, under certain special circumstances. The later decisions in that country deny the existence of such a right of action; though it is held, that if the contract is of a character which constitutes the promisor a trustee for the third person, such person may enforce his rights in equity. Of course if there is, by agreement of all parties, a novation, or substitution of one debtor for another, the case is different.

In America, the courts of a few States follow the English rule more or less closely. But the great weight of authority is to the effect that if the promise is made for the purpose of conferring a benefit on a person, though he be not a party to the contract, or

furnish the consideration for the promise, he can bring suit upon it. In the application of the rule to particular facts, and the determination of whether certain cases fall within or without it, there is much conflict, not only in the decisions of the courts of different States, but frequently in those of the same State. Some of this confusion has arisen from a failure to consider carefully what is meant by the rule, and the foundations of the liability declared by it. Nor have the courts always kept clearly in view the difference between several questions: (1) Has there been a novation or substitution of one debtor for another by agreement? . (2) If one person conveys property to another, and the latter agrees to assume and pay the debts of the former, do the creditors acquire any right or interest enforceable either at law or in equity? (3) As to partnerships, if one member of a firm retires, and the remaining member, or a new firm formed by him and another, purchases the assets and assumes the debts of the old firm, as among themselves the assuming partner or firm ranks as principal, and the retiring partner as surety. How far can they affect former creditors by this arrangement, by notice to them? Or must a creditor not only have notice, but also assent? And if he can be affected by notice, can he not assent for his own benefit, if he so desires?

The benefit which is referred to as giving a right of action by a beneficiary, under the American rule, must not be an indirect or incidental one; but the contract, properly construed, must exhibit an intent to confer a benefit on the third party. Whether particular contracts were primarily for the benefit of the parties thereto, or whether they were intended to confer a benefit on third persons, though also operating for the benefit of the immediate parties, has given rise to many decisions. In New York, which was the leading State in establishing the American rule, it was said that it was not every contract for the benefit of a third person which could be enforced by him; but that two things must concur,—the intent to benefit the third party, and the owing of some obligation by the promisee to the third party. When this combination occurs, it has been considered sufficient to create a right or interest in the beneficiary, which has sometimes been analogized to a trust, sometimes called an equity, and sometimes treated under other legal heads. In a full and valuable note to Baxter *v.* Camp, 71 Am. St. R. 169, 175 et seq. (71 Conn. 245, 41 Atl. 803, 42 L. R. A. 514), both rules

are discussed, and the modifications of them in different jurisdictions. On page 187 (referring to the American rule), it is said: "The rule has been variously stated as resting upon: 1. A trust relationship; 2. The equitable right of subrogation; 3. Agency; 4. Privity of contract by substitution; and 5. The broad equity of the transaction." The equity and justice underlying the rule is emphasized, where a debtor conveys his property subject to the payment of his debts, and as part of the consideration receives a promise to pay his creditors. Where acceptance by the creditor of the promise of the purchaser has been held to be required, express acceptance has not been deemed necessary, but it has been said that this could be shown by circumstances. And in some States, the bringing of a suit has been deemed sufficient. Motley v. Manufacturers' Insurance Co., 29 Me. 337 (50 Am. D. 591); Copeland v. Summers, 138 Ind. 219 (35 N. E. 514, 37 N. E. 971). It has also been urged that it should not be assumed that the seller had a purpose to defraud his creditors, or to place his property beyond their reach, or to escape payment, but that it should rather be inferred that such a contract contemplated a direct benefit to them by furnishing to the buyer assets and requiring a promise to pay debts. It is generally held in America that the creditor has a right of action at law; but in some jurisdictions, and under some circumstances, the remedy in equity, or by equitable proceedings, has been held to be more complete. Agreements to indemnify the seller against loss or against creditors might perhaps be different.

In cases where a person in business takes in a partner, or one member of a firm sells his interest to a third party, and the new firm takes the assets and assumes and agrees to pay the existing debts of the old one, there is an additional reason in certain jurisdictions for holding that such creditors may have a right of action, at law or in equity, against the new firm.

In 1836 the case of Oakeley v. Pasheller, 4 Cl. & F. 207, was decided by the House of Lords. That decision was quite generally supposed to have held, in effect, that if a firm dissolves, and one of the partners (or he and a new partner) takes the assets and assumes the liabilities, the retiring partner, or new firm, thereafter occupies the position of a surety, not only as between the partners themselves, but as to creditors of the old firm to whom notice of such contract has been brought; that such a creditor with knowledge

is required to treat the retiring partner as a surety; and that if he extends the time for the payment of his debt, without the knowledge or consent of the retiring partner, the latter will be released. Subsequently in Swire v. Redman, L. R. 1 Q. B. 536, the former decision was explained by Cockburn, C. J., who said that the House of Lords did not intend to rule as stated above, but that in the case of Oakeley v. Pasheller, supra, there were facts tending to show consent by the creditor to the arrangement between the parties. Many courts, however, did not think that the decision of the House of Lords was founded on any assent by the creditors; and such decision furnished a basis for the rule as to affecting a creditor who has notice.

In an exhaustive note to Dean v. Collins, 9 L. R. A. (N. S.) 49 et seq. (15 N. D. 535, 108 N. W. 242), after discussing the ruling in the majority of the cases that an assumption of partnership liability is a promise made for the benefit of the partnership creditors, of which such a creditor is at liberty to take advantage, and which he may enforce against the assuming partner or partners, and after referring to the difference in the decisions as to whether a retiring or indemnified partner occupies the position of a surety, not only as to the succeeding partner or firm assuming the debts of the old firm, but also as to a creditor with notice, the annotator says: "So, another difference of opinion, running largely along the same lines, appears with reference to the right of a partnership creditor to take advantage of an assumption of partnership debts. Generally speaking, but with some exceptions, the courts, which regard assent by the creditor as necessary to make an assumption effectual as against the original rights of creditors and the original liabilities of the retiring or indemnified partner, hold that the creditor can not proceed against the assuming debtor alone on his assumption without joining his codebtors, unless he assented to, or became a party to, the assumption."

Let us now consider the decisions and codified law in this State. In *Bell* v. *McGrady*, 32 *Ga.* 257, a firm engaged in a livery-stable business purchased a horse and buggy, giving therefor a promissory note, which was transferred for value by the payee to another person. A short time thereafter the firm sold all of its property, including its stables, business, horses, buggies, books of account, and other appurtenances (among the property sold being the horse

and buggy for which the note was given), and the purchaser agreed in writing to pay all the debts and liabilities of the firm. The holder of the note filed a bill in equity against the members of the partnership and the purchaser. He alleged, that the prime consideration of the purchase by the person who bought the property of the firm was his agreement to pay their debts; that the purchaser did pay to the complainant a small amount on the note; that the written agreement was inaccessible to the complainant, and he believed it had been destroyed by the purchaser; that the firm and its members were insolvent; that one of them had absconded; and that the purchaser refused to pay the balance due on the note, notwithstanding he had collected from the credits of the firm more than enough for that purpose. The bill prayed for discovery, and that the purchaser from the firm be compelled to pay to the complainant the principal and interest due on the note. At the trial a motion was made on behalf of the defendant to dismiss the bill, for want of equity, and because the complainant had an adequate remedy at law. The trial judge dismissed the case. This court reversed the judgment. It was held that the purchaser of the assets of the firm, by virtue of his agreement with them, stood in the position of a trustee to pay their debts, and that it was proper for the creditor to go into equity to enforce this agreement.

In *Dallas* v. *Heard*, 32 *Ga.* 604, a married woman and her children were interested in certain property. They entered into an agreement by which it was stipulated that such property (except certain specified articles) should be "all sold, and that the proceeds of the sale, and the negroes (after payment of all debts for which said property is legally bound) be divided among said children, in consideration of which the children should each pay to the said Lucinda [the woman] annually the one sixth part of $350 during her natural life." Under this agreement the property was sold and a division made. A short time thereafter the woman died insolvent, leaving no estate of any kind, and no administrator was appointed. A creditor of the woman, who held a note made before the date of the agreement, filed a bill in equity against the children, alleging that the debt was a charge upon the estate of the woman, and that, as the children had the property, each should pay a proper proportion of the debt. On demurrer the bill was dismissed. This court reversed the judgment, holding that the question as to whether the

40

plaintiff, who was not a party to the agreement, could enforce it in equity was no longer an open one, after the decision in *Bell* v. *Mc-Grady,* supra. It was also held, that, the original debtor having died leaving no property, and no administration having been granted, this was a sufficient excuse for not making her, or a representative of her estate, a party to the bill. The decisions in these two cases have never been reversed or formally modified, though in some decisions the cases under consideration were distinguished from those cited above. If there should be an irreconcilable conflict between them and some later decision, without any overruling or changing of the earlier decisions, under our statute the older decision would stand. Civil Code (1910), § 6207.

In *Empire State Insurance Co.* v. *Collins,* 54 *Ga.* 376, a domestic fire-insurance company issued a policy. Afterward another domestic insurance company, whose principal office was in a different county, purchased from the insuring company its business and assets, and assumed the payment of its indebtedness due or to become due on its policies. No contract was made by the purchasing company with the holder of the policy, and nothing occurred to establish any relation between them, or to give the person assured any claim on the second company, except such equitable rights as he might have growing out of the contract between the two corporations. After a loss by fire, the assured brought an action at law against both companies in a county where the original insurer had no office or agent. It was held, under the statute as it then stood in relation to venue, that suit could not be brought against the insuring company in that county; and, this being so, that the action at law could not be sustained separately against the purchasing company, as there was no such privity or relation between it and the assured as would entitle him to such action against that company on the contract made between the two companies. In the opinion it was said: "No contract was made between the plaintiff and the Home Company [the purchasing company], no premium had been received by it from him, and the only claim he had on that company was the equitable right growing out of its contract with the company which issued his policy. It is true, he might enforce this agreement by bill: 32 *Ga.* 257; ibid. 604; or at law, with proper pleadings. But to have asserted it against the Home Company, it would have been necessary to have made the Empire

Company a party, and had it legally served." Here is a distinct recognition of the equitable right of the assured.

In *Bracken & Ellsworth* v. *Dillon*, 64 *Ga.* 243 (37 Am. R. 70), it was sought to bind an incoming partner for the debts and liabilities of a former firm, which had been succeeded in business by an individual, and by the debts of this individual, who had been succeeded by another firm, against which the suit was brought. It was held that the plaintiffs must show some agreement on the part of the incoming partner, upon a sufficient consideration, to assume such liabilities and pay such debts, before he could be bound, through the new firm, to pay the old indebtedness. This decision accords with the general rule that one can not be made liable for a debt which he neither incurred nor agreed to pay. The mere entrance of a new partner into a firm does not render him liable for pre-existing debts. But this does not affect the question of what legal or equitable rights pre-existing creditors may have, if the new partner, in acquiring an interest in the firm, agrees that the new firm will assume the debts of the old. Some of the language in the opinion in that case may be broad; but there is no ruling that, in case of such an assumption, pre-existing creditors would have no rights, legal or equitable.

In *Morris* v. *Marqueze & Varney*, 74 *Ga.* 86, the ruling was repeated. It has since been codified. Civil Code (1910), § 3174. In connection with the expression, " on sufficient consideration," it is to be noted that in this State a consideration does not have to move from the person to whom the promise is made. In Civil Code (1910), § 4249, it is declared: "If there be a valid consideration for the promise, it matters not from whom it is moved; the promisee may sustain his action, though a stranger to the consideration." If the creditors may not technically be designated as promisees, the principle is recognized that a person may enforce a contract, though he did not furnish the consideration. Besides, the obligation of the original firm to pay its creditors, and the fact that the assets subject to the debts are transferred, and as a part of the transaction the obligation is assumed by the new firm, must not be overlooked.

In *Gunter* v. *Mooney*, 72 *Ga.* 205, a woman and another entered into a written agreement, whereby the other party was to take the son of the woman, feed and clothe him, and give him a common

school education, and a horse, bridle, and saddle when he became twenty-one years of age. After becoming of age, the son brought suit against the third party, alleging a breach of covenant, in that the defendant failed to give him a common school education. It was held that he was not a party or privy to the contract, but a mere stranger, and could not maintain an action of covenant upon it. It will be seen that this involved no transfer of assets subject to debts, no assumption of pre-existing debts, and no question of partnership. In fact there was no legal duty on the part of the parent to furnish a common school education, and no assumption of the performance of such a duty by the other contracting party.

In *Pfeiffer & Co.* v. *Hunt, 75 Ga.* 513, a surviving partner of a firm sold the entire partnership property, and as a part of the consideration the purchaser agreed to assume all the liabilities of the firm, and also to pay a certain sum of money. A person who held a promissory note executed, not by the firm, but by one of the partners as principal and the other as surety, brought suit on the note against the purchaser of the partnership assets, alleging that the note was for merchandise sold to the firm while in business. It was held, that there was no privity between the holder of such a note and the purchaser of the firm property; that there was no agreement to pay the holder of such note, which was not a partnership debt, but an individual debt of one partner on which the other was surety; and that the petition was demurrable. An offer was made to amend the petition by setting out the written contract, whereby it was alleged that the purchaser undertook and obligated himself to pay all indebtedness of the business conducted by the former partners, and that the promissory note held by the plaintiff was one of the liabilities of the business, which the defendant agreed to pay. It was held that this amendment was properly refused. It was said in the opinion that in its original form the suit was "against a party that it was sought to substitute for the principal debtor and his security. The amendment offered to charge the defendant as having undertaken to pay the debt, which the plaintiff alleged was due to him from the firm of Truitt & Hunt." It was added, that there was nothing in the original pleadings to amend by; and that, had there been enough upon which to engraft an amendment, the one offered sought to introduce a new and distinct cause of action. It will be seen that this did not hold that the creditor would have had no

rights as against the purchaser, upon an action properly brought.

In *Austell* v. *Humphries, 99 Ga.* 408 (27 S. E. 736), S., being indebted to H., agreed with him in parol that H. should, to the extent of the indebtedness, have "an interest" in certain promissory notes which S. held on a third person. Subsequently S. delivered these notes to A. for use by the latter in raising money, with an understanding that H. was to be paid out of their proceeds; but there was no contract or agreement of any kind between A. and H. A. raised money on the notes, but did not pay any portion of the same to H., though he afterwards promised H. in parol to pay H. the debt due him by S. It was held that H. had no such title to the notes in question as would have authorized him to bring an action against S. for any of the notes or their proceeds. It was said that the suit was upon an express contract, and no contract between H. and A. was shown. It was further held that the promise made by A. to H., after receiving and realizing on the notes, that he would pay H., was without legal consideration, and did not furnish a ground for recovery. Here again the question arose upon a suit which was considered to be one at law based on an express contract. There was also no question of partnership, and no transfer of firm assets with an assumption of firm debts. *Spears* v. *Scott,* 111 *Ga.* 745 (36 S. E. 950), depends on special facts; but, in so far as it throws light on the question, it seems to recognize the equity of a mortgage creditor whose debt a purchaser of land agreed to pay.

In *Hawkins* v. *Central Ry. Co.,* 119 *Ga.* 159 (46 S. E. 82), one railroad company sold to another its property and vendible franchises, in consideration of a sum of money and an agreement by the purchaser to pay the vendor's "current liabilities." It was held that one who had been injured by reason of the negligence of the vendor company could not maintain a suit therefor against the vendee. After referring to the two lines of decisions, the opinion said that the court was relieved from deciding between these divergent authorities, in view of the common-law principles codified in two sections. One was the section already quoted, which declares that if there be a valid consideration for the promise, it matters not from whom it moved; and that the promisee may sustain his action, though a stranger to the consideration. Civil Code (1910), § 4249. The other was the section which declares: "As a general rule, the action on a contract, whether express or implied,

must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." Civil Code (1910), § 5516. It may be doubted whether these sections have the full effect seemingly attributed to them. Declaring that a promisee may enforce the promise, although he did not furnish the consideration, does not seem to exclude persons who may have interests from protecting them by appropriate action. And the statement that "as a general rule" the action must be brought in a certain way would seem to imply the existence of exceptions to such general rule, rather than its universality. But however that may be, this decision and others establish the rule, that where a vendee agrees to pay the debts of the vendor, the creditors of the latter can not in this State sue the vendee at law, upon the contract. It has since been followed in *Guthrie* v. *Atlantic Coast Line R. Co.,* 119 *Ga.* 663 (46 S. E. 824). It does not, however, settle the question of when there may be equitable rights in creditors, which may be protected by equitable proceedings and with proper parties. Nor does it deal with the status of retiring or incoming partners and the assumption of the debts of the former firm by the latter. In an illustrative way, it was said in the opinion: "'Thus, if property is put in the hands of an assignee or trustee to be sold and the proceeds applied to the payment of creditors, the latter may sue in equity to enforce the agreement for their benefit (*Bell* v. *McGrady,* 32 *Ga.* 257; *Dallas* v. *Heard,* 32 *Ga.* 604 (2))." But in fact such was not the exact agreement made in those cases, especially not in the case of *Bell* v. *McGrady,* as will appear from what is said in a former part of this opinion. In *Spears* v. *Scott,* supra, a somewhat similar reference was made to those cases, when it was said: "In *Bell* v. *McGrady,* 32 *Ga.* 257, and *Dallas* v. *Heard,* Ib. 604, wherein the contracts sued upon were construed to constitute the promisor trustee for the benefit of the third person, it was held that the latter might sue thereon in equity." Neither in the case of *Hawkins* nor in that of *Spears* was mention made of what was held, in the two earlier cases cited, to be sufficient to create "a trust," or an enforceable equitable right, in favor of creditors of a vendor, especially where the original debtor was insolvent.

If it be suggested that garnishment is the remedy of the creditor, it may be asked, how can a creditor garnish a promise to pay his

own debt? Suppose that all, or a large part, of the consideration for the sale of a debtor's property was the promise by the vendee to pay the vendor's debts, what would be the status of the creditors?

From what has been said, it will be seen that, in this State, the creditor of the vendor can not bring an action at law against the vendee assuming to pay debts; but, in a proper case, may resort to equitable proceedings in the superior court, which can give both legal and equitable relief. This meets one objection which has been raised to the rule allowing the creditor to sue directly,—that both the debtor, who is the direct promisee, and the creditor might have a right of action against the promisor. If all parties are before the court on equitable proceedings, full justice can be done, and the rights of all protected. A somewhat similar ruling was made as to a partial assignment of a chose in action. It was held that the assignee could not sue the debtor at law, but might bring an equitable proceeding, wherein the rights of all parties could be determined. *Rivers* v. *Wright,* 117 *Ga.* 81 (43 S. E. 499).

We now turn to the doctrine, as it exists in this State, of the effect of a dissolution of a firm, or sale by one partner to a third person, and the assumption of the debts by the continuing partner or firm, as creating the relation of principal and surety. In *Preston* v. *Garrard,* 120 *Ga.* 689 (48 S. E. 118, 102 Am. St. R. 124), the subject was carefully considered, the decision in Oakeley *v.* Pasheller, 4 Cl. & F. 207, supra, and the later explanation of it by Cockburn, C. J., were mentioned, and a review of the decisions in this State made. Upon the whole, it was declared that this court had followed what was understood to have been ruled in the Oakeley case, and that it was the fixed rule here that "a creditor of the partnership, who has notice of the dissolution and the agreement by the continuing partner to assume the debts, is bound to accord to the retiring partner all of the rights of a surety," and may so act as to work the discharge of the retiring partner from liability, as a surety might be discharged. This rule can not be confined to a case where one partner retires, and the remaining partner assumes the debts. In the parent case cited above, a partner died. A new firm was formed by the remaining partner and another, which purchased the interest of the decedent, and the new firm agreed with the executor to assume and pay the liabilities of the old firm. See also Arnold *v.* Nichols, 64 N. Y. 118.

It is submitted that it would be most extraordinary if the courts should hold that partners, by means of a sale of the interest of one to another, or to a new firm, and an agreement by the latter to assume the debts of the old firm, could affect a creditor having notice, place on the latter the duty of respecting the rights of the retiring partner as a surety, whose principal is the partner or firm assuming the debts, and yet declare that the creditor can not elect to treat the partner or firm so assuming the debt as the principal. An arrangement of the character named, to which the creditor is not a party and does not assent, does not of itself destroy his right to sue his original debtors. But if it compels him to recognize a status for the benefit of such debtors, or one of them, is he debarred from the privilege of recognizing it for his own benefit?

By Civil Code (1910), § 3216, it is declared that "the rights of creditors shall be favored by the courts, and every remedy and facility afforded them to detect, defeat, and annul any effort to defraud them of their just rights." And in section 3217, it is said: "Courts of equity should assist creditors in reaching equitable assets in every case where to refuse interference would jeopard the collection of their debts." If not a violation of the letter of these sections, it would certainly not accord with their spirit and purpose to hold that a firm of debtors could shift their assets at will, and impose on their creditors duties by mere notice, but could prevent a creditor from accepting for his benefit the status which they had thrust upon him for their own. Such is not the law.

In the present case Bridges sought to have a court exercising equitable jurisdiction to wind up the affairs of Parr, Bridges & Co., and to "make just and final distribution of all its assets, amongst all persons entitled to share therein." But he objected to Sheppard's intervening and claiming the right to "share therein," or attacking the claims of Bridges, and seeking equitable relief. The complainant opened the door of a court of equity and invited entrance, but he objected to Sheppard as an unwelcome intervenor.

Sheppard claims to stand as a retiring partner of Sheppard & Parr, with the rights of a surety against Parr & Parr, who were succeeded by Parr, Bridges & Co., which firm assumed the debts of the former firms, but have not paid them; and he alleges that he has had to pay some of the debts of Sheppard & Parr. He alleges also, that the purchase-money for his interest in the firm of Shep-

pard & Parr has never been paid; that he retained title to it until payment; that he thus stands as a creditor; that the fund before the court arose in part from insurance policies transferred by him; that Bridges has never paid for his interest, has destroyed evidence of indebtedness by him to the former firms, and is seeking to secure for himself the only funds of the firm available for payment of the debts. Under his allegations, he is entitled to intervene and seek relief. None of the grounds of the demurrer were meritorious, and they should have been overruled.

We do not pass on questions of priority of claims, as they are not before us; but only upon the right to file and urge an intervention.

*Judgment reversed.  All the Justices concur, except Hill, J., not presiding.*