Gilbert, Justice,
dissenting. The case presents the question: Where A conveys land to B, reserving in the deed the rents, profits, *182 and issues to himself for life, and providing in the deed that after his death B shall pay to C for life $100 per month from the rents, profits, and issues from the land, can C enforce the provisions made for him in the deed; and if C can enforce the provisions in the deed, can his assignee of those rents, profits, and issues maintain a suit against B and any grantee in the deed made by B conveying the land, to enforce and collect the annuity provided out of the rents, profits and issues? The rule is not harmonious in the various jurisdictions of the country, but it is made plain in the Reports of this State that the English rule has been adopted in Georgia, and this is expressed in the Code of 1933, § 3-108, as follows : "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, shall be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent.” As suggested in the quoted section, there are exceptions to the general rule, and the Reports of this State contain many cases in each category. In Sheppard v. Bridges, 137 Ga. 615 (74 S. E. 245), Justice Lumpkin discussed practically all of the former decisions of this court; and in Shropshire v. Rainey, 150 Ga. 566, 571 (supra), cases falling under the general rule and those under the exception are referred to. For the purposes of the present case, it may be stated that for the right to exist in a third party to maintain an action on a contract between other parties, and 'under which some benefit was intended to be conferred on him, it must appear that a trust was created for his benefit or that he was a party to the contract or that his relation or status has been changed by the contract. The present case does not come within any of the exceptions that are recognized. It does not appear from the record that J. B. Proctor has been receiving any benefits whatever from his brother, W. J. Proctor, the grantor in the deed to Wesleyan College, or that he was in any sense a creditor. There was no privity in the contract as to him. It follows that, not having been accustomed to any benefits from W. J. Proctor, he would not suffer a change of relation or status in the event Wesleyan College failed to pay him any annuity from the rents, profits, and issues of the land. Nor can it be contended that a trust was created for his benefit. In consideration of the deed, Wesleyan College merely agreed to pay J. B. Proctor, after the death of *183 W. J. Proctor, $100 per month from the rents and profits. No charge was put upon the land itself, and a charge upon the rents and profits, if any, does not constitute a charge upon the land. Hitchcock v. Culver, 107 Ga. 184 (supra). Compare Atlanta, Knoxville &c. Ry. Co. v. McKinney, 124 Ga. 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215). There must be in existence a res upon which a trust, if any, can attach. Manifestly, the rents and profits were only in the future. Nor can it be said that there was created a covenant running with the land. In Rosen v. Wolff, 152 Ga. 578, 583 (110 S. E. 877), it was said: “There is much confusion and conflict in the authorities upon the subject of what constitutes a personal covenant and what constitutes a covenant running with the land. If a covenant is such that its performance or nonperformance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land and binds assignees of the covenantor as well as the covenantee and his personal representatives.” The agreement to pay J. B. Proctor did not affect the “nature, quality, value, or mode of enjoyment of the demised premises,” but was an obligation to pay from any rents and profits without any restrictions upon the use and enjoyment of the land itself. There does not seem, therefore, to be anything in the ease to bring it within the exceptions; and the demurrer was properly sustained as against the petitioners to whom J. B. Proctor had deeded his interest. Moreover, assuming but not conceding, that there was originally a covenant running with the land, the beneficiary was J. B. Proctor himself, after the death of W. J. Proctor, .and when he made the arrangement with Wesleyan College, as hereinafter referred to, by which he caused the conveyance to his daughter, Mrs. Redfern, “in settlement of any and all obligations or responsibilities on the part of” Wesleyan College to J. B. Proctor “by reason of the provision in the deed of W. J. Proctor, aforesaid, and the acceptance ■ of said deed” by Wesleyan-College, the covenant, whether running with the land or being only a personal one, was by that agreement wiped out instanter as to J. B. Proctor, and the deed passed to Mrs. Redfern without any covenant whatsoever.
But even assuming that J. B. Proctor had a right to bring an action under the contract, and that his assignees had the same *184 right, the petition, does not set forth a cause of action. Although the petition contains certain conclusions of law as to a charge having been put upon the land by reason of the conveyance to Wesleyan College, the exhibits do not bear out such allegations, and the demurrant is not bound by the conclusions. A demurrer admits only those allegations well pleaded. Nowhere in the petition is there any allegation that Wesleyan College ever received any rents and profits from the land. Hence it must be inferred that there was no fund out of which the money claimed by the petitioners could have been paid by the College. It was to be paid from .“the rents, issues, and profits.” The nearest to an allegation that any rents and profits had been received from the land is that in reference to Mrs. Eedfern: “Said Mrs. Eedfern accepted the deed set out in the next preceding paragraph, and immediately went into possession of said land and collected the rents and profits thereof, which were very large, amounting to more than $4,000 each and every year since the death of said W. J. Proctor. Said Mrs. Eedfern is now in possession of said land.” Construing the allegation most strongly against the pleader, it can not be said that this allegation can be so extended as to include a charge that Wesleyan College had received any of the rents and profits. If it had not received any, there was nothing out of which the $100 per month could be paid. The language of the deed in that respect is: “A part of the consideration of this deed is the agreement on the part of Wesleyan College that it will pay the brother of W. J. Proctor, said brother being J. B. Proctor of Meigs, Thomas County, Georgia, the sum of one hundred dollars ($100.00) per month from the rents, issues, and profits of said realty from the date of the death of W. J. Proctor to the date of the death of J. B. Proctor. And in accepting this deed, said College hereby agrees to make such payment.” (Italics ours.) The obligation of Wesleyan College was thereby limited to paying J. B. Proctor from a specific fund, and there is no allegation that they ever received such a fund “from the rents, issues, and profits.” Obviously, the words “such payment” in the last sentence quoted from the deed refer only to payment from such source, and do not add any additional liability to Wesleyan College. Such a provision, as shown in Hitchcock v. Culver, supra, does not reach the corpus; and it not being alleged that Wesleyan College received any rents, *185 issues, or profits from the land, the court did not err in sustaining the demurrer as to that defendant.
Is Mrs. Eedfern liable P It is argued in the brief of the plaintiffs that she “assumed the charge,” that such was the only consideration on which the property was conveyed to her by Wesleyan College. A copy of the deed from Wesleyan College to Mrs. Eedfern is attached to the petition, and an examination of the deed discloses that “This indenture is made in settlement of any and all obligations of responsibilities on the part of the party of the first part of the said J. B. Proctor, by reason of the provision in the deed of W. J. Proctor, aforesaid, and the acceptance of said deed by the party of the first part; this quitclaim being made to the party of the second part, the daughter of the said J. B. Proctor, at his special instance and request,” etc. In other words, the consideration was furnished by J. B. Proctor, to wit, his right to receive $100 per month from any rents and profits which Wesleyan College might receive from the land conveyed by W. J. Proctor. Evidently the daughter’s ownership of the land was of more concern to him than his expectancy of annuities from thq rents and profits, and Wesleyan College, for reasons satisfactory to itself, was willing to accept that consideration and deed the property to Mrs. Eedfern at J. B. Proctor’s “special instance and request.” It is apparent that in accepting the deed she does not promise to do anything or to assume any charge, and the deed negatives the claim of the plaintiffs that the consideration was one from her, to wit, that she assumed the charge of paying the $100 per month. The consideration from J. B. Proctor, that is, giving up his right to any sum that might become due from Wesleyan College, was a sufficient consideration to support the deed to his daughter, Mrs. Eedfern. No further consideration was necessary to the validity of the deed, and none was furnished by Mrs. Eedfern. Upon the execution and delivery of the deed the right of Proctor to any amount from the rents and profits was wiped out. This deed was executed on October 27, 1932, but the record shows that on February 27, 1932, J. B. Proctor had quitclaimed to the plaintiffs in error “all claims in my equity, right, title, or interest in all of said property [that conveyed by W. J. Proctor to Wesleyan College], and all claims in my name may be made in the names of said children for the cancellation of said deed to Wesleyan College *186 and the last will of my brother, if his children desire to do so, and all my rights are transferred and quitclaimed to the parties aforesaid,” etc.
It is urged by the plaintiffs that as this paper had been recorded when Mrs. Redfern took the deed from Wesleyan- College, she was charged with notice of it, and can not avoid payment of the annuities to them. It should be held that the record did not constitute notice to Mrs. Redfern, and there was no allegation that she had actual notice. The deed does not convey an interest in land, but only in personalty. Such a recorded deed is not notice to a subsequent purchaser without actual notice. Furthermore, the instrument was recorded, not in the residence of the maker, but in Muscogee County, and for that reason it was not notice to Mrs. Redfern. Code of 1933, § 29-413. Again, the paper was a voluntary conveyance. While it is recited that “in consideration of $1.00 and love and affection,” etc., the interest was conveyed and quitclaimed to the nephews of J. B. Proctor, the nominal amount of one dollar does not necessarily make the conveyance other than voluntary. It is well settled that under such circumstances the intention of the parties may be ascertained, in determining whether or not a deed is a voluntary one. Martin v. White, 115 Ga. 866 (4) (42 S. E. 279); Pierce v. Bemis, 120 Ga. 536 (48 S. E. 128). The intention to make a gift without the payment of any money is, I think, evident from the concluding part of the instrument executed by J. B. Proctor, wherein it is recited: “I want my nephews to have everything that my brother tried to give or provide for me under the deed and will aforesaid, and I hope the authorities will give them all of my brother’s property.” So, even assuming that the instrument was a legal conveyance of whatever right J. B. Proctor had, Mrs. Redfern was not bound by it, and, under the agreement between J. B. Proctor and Wesleyan College, she took the property free from any obligation whatsoever. No responsibility rested upon her after she received the deed from Wesleyan College upon the consideration furnished by J. B. Proctor. It is, as to Mrs. Redfern, immaterial if Wesleyan College had actual notice of the quitclaim deed to the petitioners. “If one with notice shall sell to one without notice, the latter shall be protected.” Code of 1933, § 37-114.
*187 John G-. Cozart, as executor of the will of W. J: Proctor, was named a party defendant, but it is stated in the brief of the plaintiffs that nothing is sought from him. The judgment sustaining the general demurrer and dismissing the petition should be affirmed.