## HARRIS *v.* JOHNSON.

1. A mother, who was a widow, having agreed in parol with another to take her minor son, about ten years old, and board, clothe and send him to school till he was of age, have his services to that time, and then give him a horse, saddle, bridle and suit of clothes; and this contract having been faithfully carried out by the person who had made the same with the mother, until his death, which occurred some five years after the contract was made, the services of the child during this period not being of greater value than what was done for and received by him, the estate of the deceased was not liable to the child, or the mother, in any amount.

2. Where, after the death of such person, his widow and his son agreed with the mother of the child to carry out the contract of the deceased, but in point of fact the child worked until his majority for the son of the deceased, who promised the child to pay him for his services; and where, upon the child's becoming of age, his employer not only repudiated the original agreement of his father as to the horse, saddle, bridle and suit of clothes, but also refused to pay the child the value of his services, the latter could maintain in his own right an action for the same against his employer upon a *quantum meruit*, it appearing that the plaintiff had been practically manumitted by his mother, that she had relinquished any right to claim compensation for his services, and consented for him to receive the same.

3. The evidence fully warranted a finding that the real facts of this case were as above summarized; the charges requested.

were not adjusted to the issues involved, and the charge complained of, if not strictly correct, was not harmful to the defendant. The verdict appears to have done substantial justice, and being the second one in the plaintiff's favor, this court will not set it aside.

May 11, 1896. Argued at the last term.

Complaint on account. Before Judge Milner. Whitfield superior court. October term, 1894.

*McCutchen & Shumate,* for plaintiff in error.
*R. J. & J. McCamy,* contra.

SIMMONS, Chief Justice.

The father of Johnson, the defendant in error, died, leaving a widow and five young children, one of whom was the defendant in error. The mother, being unable to support them, entered into an agreement with Wm. Harris, Sr., the father of the plaintiff in error, to the effect that he was to take the defendant in error and board and clothe him and send him to school, and receive all his services, until he should reach the age of twenty-one years, and when he should arrive at that age, Harris was to give him a horse, saddle, bridle and a suit of clothes. He was then ten years of age. He remained with Harris until the latter's death, which occurred when the boy was about fifteen years old. A new arrangement was then made by the mother and the boy with the widow of Harris and his son, the plaintiff in error, whereby they agreed to carry out the original agreement. The boy remained with him until he was twenty-one years old. The evidence is conflicting as to who was his employer during this latter period, but we think a preponderance of the evidence shows that he worked for the son instead of the mother. There is evidence also that the son agreed with the boy that if he would stay with him and work for him, he would pay him for his work on his arrival at majority. When he arrived at majority, he demanded payment from Harris for his services, and this demand being refused, brought his action against Harris upon a

*quantum meruit* for the value of his services for six years. On the first trial of the case the jury rendered a verdict for the plaintiff, and on a motion for a new trial by the defendant the court set aside the verdict. On the next trial, the jury again rendered a verdict for the plaintiff, and the court refused to set it aside upon the motion of the defendant; whereupon the latter excepted.

1. It was insisted that the defendant was not liable, because the contract, if any was made, was between the defendant's father and the mother of the plaintiff, and the right of action was in the mother and not in the son; and that if there was any liability at all, the estate of the defendant's father was liable, and not the defendant himself.

When a father dies, leaving a widow and minor children, the mother is entitled to the custody and control of the children, and to their services during their minority; but she can release her right to the services of a child, and if she does, of course she cannot recover therefor, but the right of action would be in the child. We think, therefore, that when the mother made the agreement above mentioned with the elder Harris, it was a virtual relinquishment by her of the custody and control of the child and of her right to receive compensation for his labor. If the elder Harris had lived until the child became of age and had then refused to carry out his agreement with the mother, we think the child could have brought an action against him to recover for the value of his services; but inasmuch as the evidence shows that he carried out his contract and that the services rendered up to the time of his death were not worth more than what was done for and received by the child, the latter was not entitled to recover anything from the estate of his deceased employer. When the elder Harris died, the agreement between him and the mother in behalf of the child died with him. The relation of master and servant is dissolved by the death of the em-

ployer. Wood, Master and Servant, §44, p. 62; 1 Am. & Eng. Enc. of Law (1st ed.), p. 639, a.

2. The mother of the child and the widow of the son of the employer seemed to recognize this rule, and after the death of the employer made a new agreement whereby they were to carry out as individuals the original agreement. Under this new agreement the plaintiff remained on the farm, and it seems fully performed his duty. Mrs. Harris, the widow of the employer, and her son, the defendant, also remained on the farm, but the son cultivated and managed it, and used its proceeds for his own benefit; and the evidence shows that the plaintiff worked for him from the time the new contract was entered into until the plaintiff arrived at majority. Under this state of facts, we have no hesitation in holding that upon the refusal of the defendant to carry out the agreement, the plaintiff could recover against him upon a *quantum meruit*. The evidence shows that the plaintiff's mother had virtually manumitted him, and he was therefore entitled to sue in his own right for his services. As before remarked, the evidence is conflicting as to whether the plaintiff was working for the defendant's mother or not, but according to the weight of the evidence he gave his whole time and services to the defendant.

3. The evidence warranted the jury in finding for the plaintiff. The request of the defendant's counsel to the court to charge as set out in the record was not adjusted to the points in issue between the parties, and was therefore properly refused. The charge complained of in the motion for a new trial, if not exactly accurate, was not harmful to the defendant. The verdict appears to have done substantial justice to the parties; and the trial judge being satisfied therewith, we will not interfere with his discretion in refusing a second new trial.     *Judgment affirmed.*