### COOPER *v.* CLAXTON, executor.

1. The plaintiff's petition, properly construed, set forth but two causes of action, one, based upon a quantum meruit, for the value of services rendered by him, during a given period, to the defendant's testator; the other for the breach of a contract made by the plaintiff's father with such testator, for the plaintiff's benefit.

2. An allegation that the plaintiff lived with the defendant's testator " a long period of time after he became of age and worked for him without compensation, with the understanding and by the promise and contract of the deceased that he would provide by will or otherwise that petitioner should have one half of his estate," if intended to set forth a contract between the plaintiff and such testator, is too vague and indefinite to withstand a demurrer upon the ground that it fails to set forth what the terms of the contract were.

3. A count in a petition upon a quantum meruit, for the value of the plaintiff's services from one given date to another, is barred by the statute of limitations when it appears that more than four years elapsed after the termination of the services before the suit was brought, and that the plaintiff during all of this time was sui juris.

4. Where A made a contract with B, by the terms of which C, the minor son of A, was, from a given date until he became of age, to live with and " be a faithful hand and servant " to B, and, if he did so, B " would provide by will or otherwise for " C " to have one half of his entire estate " at his death, and C did, from such time until he attained his majority, live with

B and faithfully perform the services contemplated, but B died without having complied with his part of the contract, C had no right of action thereon against the representative of B's estate.

Submitted March 8, — Decided March 25, 1905.

Complaint. Before Judge Hammond. Johnson superior court. August 29, 1904.

On February 4, 1904, J. H. Cooper brought an action against L. J. Claxton, as executor of the will of W. G. Sammons, alleging that Sammons died in 1901 and Claxton "was executor of [his] estate" and had possession of the same. The third paragraph of the petition was as follows: "That from January, 1876, to December 25th, 1881, inclusive, petitioner performed various and sundry services for the deceased on his farm in said county, that said services were worth the sum of $300.00 per year, making a total of $1800.00." The fourth paragraph alleged, "that said services were performed at the special instance, request, and solicitation of the deceased, upon assurance, and by contract of deceased with G. W. Cooper, father of petitioner, that if said G. W. Cooper would give to, and allow your petitioner to live with deceased from January, 1876, to Dec. 25th, 1881, at which time petitioner would become 21 years old, and that if your petitioner would be a faithful hand and servant and do his duty while living with deceased, that he, deceased, would not only provide, at his death . . for him, by leaving petitioner a sufficiency of his property to compensate him for said service," but "would provide by will or otherwise for petitioner to have one half of his entire estate, if the wife of deceased was living," and "if the wife of deceased died before deceased did, then said W. G. Sammons would provide by will or otherwise that your petitioner should have [his] entire estate." The fifth paragraph alleged, "that the above promises, agreement, and contract were renewed from year to year during the said period of service," and that after "petitioner became 21 years old said promise, agreement, and contract was renewed." The sixth paragraph averred that the petitioner "lived with deceased a long period of time after he became of age and worked for him without compensation, with the understanding and by the promise and contract of deceased that he would provide by will or otherwise that petitioner should have one half of his estate." The seventh paragraph was as follows: "Your petitioner alleges that

in performing the services above mentioned he relied expressly and implicitly upon the promises of said W. G. Sammons, that he should have one half of his estate at his death, and would provide for same by will or otherwise, and that your petitioner faithfully performed his contract and did his duty." The eighth paragraph alleged that when Sammons died his wife was still living; that he failed to provide, by will or otherwise, for petitioner to have one half of his estate, and that the petitioner was entitled to one half of the same. The ninth paragraph averred that the value of Sammons's estate, at the time of his death, was $30,000.00, and prayed for a judgment in favor of the petitioner for "$1800.00 value of services performed, besides $2948.00 interest thereon at 7 per cent. per annum;" and "that he be given judgment for the sum of $15,000.00, the value of one half of said estate, and that he be given judgment for the sum of $19,784.00, the same being the aggregate value of services above mentioned and interest thereon and one half of said estate." The defendant demurred to the petition, upon the following grounds: 1st. That no cause of action was set out therein. "2nd. That the plaintiff can not recover on a contract made by his father with deceased, there being no privity between the plaintiff and his father; his father's administrator would be the party to bring said suit, or his father were he in life. 3rd. That the count for special services up to the time of his majority is barred by the statute of limitation, more than twenty years having elapsed between the time of performing said service and the bringing of this suit. 4th. That the plaintiff fails to set out how said contract was renewed, or what the terms were, or whether in writing or in parol." The demurrer was sustained and the petition dismissed. The plaintiff excepted.

*E. L. Stephens*, for plaintiff.    *J. L. Kent*, for defendant.

FISH, P. J. (After stating the facts.) 1. We think it is apparent that the petition, properly construed, set forth only two causes of action, one, in the fourth paragraph, being for the value of the plaintiff's services from January, 1876, to December 25, 1881, the value alleged being $300 per year, with interest upon the total amount from the last-mentioned date; the other being upon a breach of the contract made by the plaintiff's father with Sammons, for the plaintiff's benefit, for one half of the value of

Sammons' estate at the time of his death, alleged to be $15;000, with interest from such time. While the petition alleged that the contract of Sammons with the plaintiff's father "was renewed from year to year during the said period of service," and was renewed after the petitioner became twenty-one years old, it nowhere alleged that Sammons ever made this contract, or any other, with the plaintiff. Strictly speaking, the contract with the father could not have been renewed with the son; for a contract between Sammons and the son, although embracing the same terms as the original contract between Sammons and the father, would be between different parties, and therefore a new contract; so that, prima facie, the allegation that the contract was renewed would imply that the renewal was between the original parties, Sammons and the plaintiff's father. Certainly the allegation that the "contract was renewed from year to year during the said period of service" is obliged to refer, and to refer only, to the contract between the plaintiff's father and Sammons, as the only period of service previously referred to is that between January, 1876, and December 25, 1881, which was embraced in such contract and during which the plaintiff was a minor. After the plaintiff became of age, this particular contract could not have been renewed, even between the father of the plaintiff and Sammons, because the period of time during which the services, under this contract, were to be performed had completely elapsed, and all the services had been rendered; as to one side it had become an executed contract. Even if the past consideration and the moral obligation of Sammons to the plaintiff would have been sufficient to support a promise by Sammons to the plaintiff to pay him for services already rendered, in exactly the same way that the contract between the father and Sammons provided, this would not have been a renewal of the old contract, but the making of a new one; for it would not only be a contract between different parties, but would be one in which there was to be performance on one side only, while the old contract was one of reciprocal promises.

2. The nearest approach to an allegation that Sammons entered into a contract with the plaintiff is contained in the sixth paragraph of the petition. But the allegation that the plaintiff "lived with deceased a long period of time after he became of age and

worked for him without compensation, with the understanding and by the promise and contract of deceased that he would provide by will or otherwise that petitioner should have one half of his estate," is too vague and indefinite to set forth a contract, especially when it is assailed by a demurrer upon the ground that it fails to set out how the contract was renewed, or what the terms were.  In the first place, the allegations of this paragraph leave it uncertain whether the contract of Sammons referred to is the contract between him and the plaintiff's father, or a new contract between Sammons and the plaintiff.  In the next place, even admitting that the contract referred to is a new one between the plaintiff and Sammons, there is only a partial and meager statement of such contract.  Sammons promised to provide by will or otherwise that the plaintiff should have one half of his estate, but upon what condition, or conditions, he promised this is not stated.  What was the consideration for Sammons' promise ? What was the plaintiff to do?  If he was to live with and work for Sammons, how long was he to do so?  Was it until Sammons' death, or for a definite period of time which elapsed before Sammons died ?  It is apparent that none of these questions can be answered from the plaintiff's petition.  He simply alleges that after attaining his majority he lived and worked for Sammons a long period of time, "with the understanding and by the promise and contract of" Sammons, etc.  Clearly this paragraph of the petition, if it can be said to allege any contract between Sammons and the plaintiff, could not withstand a demurrer which called for definite and specific allegations as to the terms of the contract relied on.

. 3. The count for the value of the plaintiff's services from January, 1876, to December 25, 1881, inclusive, being based, not upon an express contract which postponed the maturity of the debt beyond the date of the termination of the services, but upon an implied contract to pay the reasonable value of the services, was clearly barred by the statute of limitations when four years had elapsed after the termination of such services and after the plaintiff had attained his majority.  Civil Code, § 3768.

4. The express contract set up in the petition, under which the payment for the services rendered by the plaintiff was to be made at the death of Sammons, was made not with the plaintiff, who

was a minor when this contract was entered into, but with his father, and the violation of this contract afforded no cause of action to the plaintiff. The plaintiff was neither a party nor a privy to this contract, but a mere stranger thereto, and hence could not maintain an action thereon. *Gunter* v. *Mooney*, 72 *Ga.* 205. The case cited is directly in point and controlling here. There " A woman and another entered into a written agreement on July 15, 1862, whereby the other party was to take the son of the woman, feed and clothe him, and give him a common-school education, and a horse, bridle, and saddle when he became twenty-one years of age; the son became of age in December, 1874, and brought suit in 1880, alleging a breach of the covenant, in that the person so agreeing had failed to give him a common-school education." It was held, "that the plaintiff could not maintain an action of covenant on the agreement set out, he not being a party or privy to the same, but a mere stranger; and the case was properly dismissed on demurrer." To the same effect, see *Austell* v. *Humphries*, 99 *Ga.* 408. The case of *Harris* v. *Johnson*, 98 *Ga.* 436, is relied on by the plaintiff in error. There is nothing in the decision rendered in that case which conflicts with the ruling made in *Gunter* v. *Mooney*, or with our rulings in the present case. The observations of the present Chief Justice, in the case cited by counsel, to the effect that where a widow made a contract similar to the one involved in *Gunter* v. *Mooney*, "it was a virtual relinquishment of her custody and control of the child and of her right to receive compensation for his labor," and that if the person who made the contract with the mother " had lived until the child became of age and had then refused to carry out his agreement with the mother, . . the child could have brought an action against him to recover the value of his services," are not in conflict with the present holding, or the case upon which it is predicated. In the particular count with which we are now dealing, the plaintiff is not seeking to recover the value of his services, but, like the plaintiff in *Gunter* v. *Mooney*, is suing upon an express contract, to which, under the ruling in that case, he was neither a party nor a privy. Besides, the case in which the learned Chief Justice made the remarks above referred to did not turn upon the question on which these observations were made. We have shown that the

only count in the present petition based upon a quantum meruit was for the plaintiff's services from January, 1876, to December, 25, 1881, inclusive, and that the cause of action set up in this count was barred when the suit was brought, as the time limited by the statute within which to bring an action upon an implied assumpsit had expired long before the suit was instituted, the services relied on having terminated and the plaintiff having become of age on December 25, 1881, and the action not being brought until February 8, 1904. The judgment complained of is

*Affirmed. All the Justices concur.*