## SHROPSHIRE *et al.,* executors, *v.* RAINEY.

1. Where two executors of a deceased person reside in different counties, the superior court of either county has jurisdiction of an equitable case praying for substantial relief against both executors. Accordingly, where it appears that such a suit was brought in the county of the residence of one executor, other than that in which his coexecutor resided and where the testator died and where administration was pending, a demurrer to the petition on the ground of want of jurisdiction was properly overruled. Civil Code, § 5527; *Brown* v. *Wilcox,* 147 *Ga.* 546 (2) (94 S. E. 993).

2. Specific performance is not a remedy which either party can demand as a matter of absolute right, and will not in any given case be granted unless strictly equitable and just. Mere inadequacy of price may justify a court in refusing to decree a specific performance of a contract of bargain and sale; so also may any other fact showing the contract to be unfair, or unjust, or against good conscience. And in order to authorize specific performance of a contract, its terms must be clear, distinct, and definite. A petition for specific performance, which fails to allege a case authorizing the relief sought under the application of the above-stated rules, is subject to demurrer.

3. "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." The facts of the case as alleged in the petition do not take it out of the

provisions of this statute and place it within the scope of any exception recognized by this court.

4. The court erred in overruling the demurrer to the petition.

No. 1749. SEPTEMBER 29, 1920.

Action for specific performance, etc. Before Judge Wright. Chattooga superior court. October 18, 1919.

*Wesley Shropshire* and *Rosser & Shaw,* for plaintiffs in error.

*J. M. Bellah* and *Maddox & Doyal,* contra.

FISH, C. J. This is an equitable action brought October 3, 1917, by Mrs. Rainey against the executors of the will of Mrs. Barksdale, for specific performance of a parol contract alleged to have been made by R. D. Jones with Mrs. Barksdale in the year 1900. The fourth paragraph of the petition is as follows: "Petitioner shows that about twenty years ago, when she was only a small child, the said Mrs. M. J. Barksdale contracted and agreed with her father, R. D. Jones, that if he would take charge of the farm above referred to [farm in Dirttown valley, consisting of two adjoining land lots in said [Chattooga] county, formerly known as the Dickerson farm, and now known as the Barksdale farm], which she then owned and has owned continuously since, would keep the same rented, collect the rents, pay the taxes, see after the necessary repairs on the buildings and farm, that she would will the same, at her death, to petitioner; and in accordance with said agreement her said father did take charge of the same, collected rents thereon, paid the taxes, and in doing the same expended on said farm approximately the sum of ($500) dollars, relying on said Mrs. M. J. Barksdale to carry out the terms of her agreement and will said property to petitioner." By amendment an itemized statement of amounts alleged to have been paid by Jones for Mrs. Barksdale during the years 1900 to 1916, inclusive, for taxes, repairs on the buildings situated on the farm, and material for repairs, is set forth; the sum of such items being $440.73. The petition alleged that Mrs. Barksdale failed to comply with her contract, but executed a will which was probated after her death, in which she failed to devise the farm to petitioner. The petition was demurred to on the following among other grounds. "First: That said petition is insufficient in law, and that no legal verdict, judgment, or decree can be based thereon." "Third: That the basis of said suit is an alleged contract between the deceased, M. J. Barksdale, and

R. D. Jones, to which plaintiff is neither a party or privy at law, and for this reason can not maintain said suit." "Fifth: They demur specially to paragraph four of said petition, and say that the allegations contained therein are vague, uncertain, and indefinite; that same are insufficient in law to place defendants on notice as to the contentions of the pleader, or [upon which] to base a verdict, judgment, or decree." The demurrers were all overruled. The defendants filed exceptions pendente lite to the judgment overruling them. The case went to trial before a jury, and a verdict was rendered for the plaintiff. Defendants moved for a new trial, which was refused, and they excepted, assigning error upon the refusal of a new trial, and upon their exceptions pendente lite. In the brief of counsel for plaintiffs in error it is stated: "The plaintiffs in error still insist upon the several grounds of their demurrer, as amended."

1. The ruling announced in the first headnote needs no elaboration.

2. On the rulings made in *Potts* v. *Mathis*, 147 *Ga.* 495 (94 S. E. 767), and subsequently in the same case, 149 *Ga.* 367 (100 S. E. 110), it is clear that the petition did not set forth a cause of action, and that the first and fifth grounds of the demurrer thereto should have been sustained by the trial judge. As was said in the decision last cited: "'Specific performance not being a remedy which either party to the contract can demand as a matter of absolute right, it will not in any given case be granted, unless strictly equitable and just.' *Kirkland v. Downing*, 106 *Ga.* 530 (32 S. E. 632), cited and applied in *Pair* v. *Pair*, 147 *Ga.* 754, 757 (95 S. E. 295). 'Mere inadequacy of price . . may justify a court in refusing to decree a specific performance; so also any other fact showing the contract to be unfair, or unjust, or against good conscience.' Civil Code (1910), § 4637. In order to authorize specific performance of a contract, its terms must be clear, distinct, and definite. *Studer* v. *Seyer*, 69 *Ga.* 125. In the absence of allegations in the petition as to the value of the lands, or of the value and extent of the services alleged as a consideration of the contract, it is impossible for the court to determine whether the services performed constituted an adequate or grossly inadequate price for the estate of the person with whom the alleged contract was made; nor could it be determined, in the ab-

sence of such essentials, whether the contract was unfair, or unjust, or against good conscience." In the instant · case there is no allegation as to the value of Mrs. Barksdale's farm, the subject-matter of the alleged contract, nor even as to the number of acres constituting it, though this court will take judicial cognizance of the fact that regular lots of land in Chattooga county contain 160 acres each. The petition alleges that the farm consisted of two adjoining lots of land. It fails to state the value of the services of Jones rendered under the alleged contract, though the amount of his expenditures in the way of taxes, repairs, etc., is set forth. It will be readily observed that the present case falls squarely within the decision in *Potts* v. *Mathis,* supra.

It is well enough to refer to what was said by Bleckley, J., in *Russell* v. *Switzer,* 63 *Ga.* 711, 725, quoted in *Lansdell* v. *Lansdell,* 144 *Ga.* 571, 572 (87 S. E. 782), viz: "None of these cases, however, are in point on the present discussion, further than they bear upon the requisites of general law concerning the fact of contract and the fullness and certainty of the evidence by which it is sought to be established. They inculcate a wholesome caution against building up imaginary contracts out of the expression of generous intentions towards persons who, having rendered service, prefer claims for compensation after those whom they served have been removed by death. And the caution is doubly necessary where the claim presented is not merely for just compensation on the basis of a quantum meruit, or to some specific article or articles of property, but goes to the entire estate, real and personal, which the decedent left behind him. Nor is it the less necessary because the heirs at law, if any there be, are remote rather than proximate kindred, or because they are foreigners. Every heir, and an heir of each degree and every nationality, must be secure of his inheritance, and one heir just as secure of it as another." We also take the liberty of referring to what Lumpkin, J., quoted in *Lansdell* v. *Lansdell* (supra) from Wall's Appeal, 111 Pa. 460 (5 Atl. 220, 56 Am. R. 288), wherein Green, J., said: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful

scrutiny to prevent injustice being done. We can not too often repeat the cautions we have so frequently uttered upon this subject, and we feel that the present occasion is one which demands both their repetition and their application."

3. The third ground of demurrer to the petition should also have been sustained. This ground was to the effect that the plaintiff could not maintain the action. In 9 Cyc. 374, it is said: "In England it is held, subject to the exceptions hereafter stated, that where two persons make a contract in which one of them promises to confer benefits upon a third party, the latter cannot sue upon the contract, at law or in equity, for the money or other benefit which it is promised that he shall receive. The same doctrine, with some differences as to the exceptions, has been held, in the absence of a statute, in some of the United States, and in some of the Federal cases. The reason is that it is held essential that the consideration shall move from the plaintiff; that there must be privity between the parties in order to support an action on the contract. (A) To the general rule above stated there are several exceptions or apparent exceptions. In the first place, where the promise of benefit to the third party creates a trust in his favor, he may enforce the trust in a court of equity. Where one pays money to another for the use of a third, the latter may sue the holder for it. (B) Where one through a contract with another has obtained money or other property which rightfully belongs to a third person, the latter may sue therefor in his own name, as the law creates both the privity and the promise. The transaction does not create a trust in the proper sense, nor does the third person's right arise out of the contract between the promiser and the promisee; but it arises out of an independent contract created by law, or quasi contract, between the promisor and the third person." There is a class of English cases where nearness of relationship of one party to the contract with the party to be benefited by it was formerly supposed to give to the latter the benefit of the consideration and a right to sue on the contract. But such cases were subsequently considered and deliberately disapproved by the Court of Queen's Bench, and can no longer be considered law. Fry's Specific Performance, § 203; Tweedle *v.* Atkinson, 1 Best & Sm. 393. The same early doctrine held by the English courts was at one time followed in Massa-

chusetts, but they have likewise been overruled and a contrary doctrine established. 9 Cyc. 377.

In this State the English rule, in effect, was adopted in our first Civil Code (1863), § 3181, which section has appeared in all of our subsequent codes, and is now embodied in the Civil Code of 1910, § 5516, which is: "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." This general rule has been applied by this court in a number of cases, among them, *Empire State Ins. Co.* v. *Collins,* 54 *Ga.* 376; *Pfeiffer* v. *Hunt,* 75 *Ga.* 513; *Gunter* v. *Mooney,* 72 *Ga.* 205; *Austell* v. *Humphries,* 99 *Ga.* 408 (27 S. E. 736); *Hawkins* v. *Central Ry. Co.,* 119 *Ga.* 159 (46 S. E. 82); *Guthrie* v. *Atlantic Coast Line R. Co.,* 119 *Ga.* 663 (46 S. E. 824); *Cooper* v. *Claxton,* 122 *Ga.* 596 (50 S. E. 399); *Fairchild* v. *Hartsfield,* 144 *Ga.* 348 (87 S. E. 285). In *Gunter* v. *Mooney,* supra, it was held: "A woman and another entered into a written agreement on July 15, 1862, whereby the other party was to take the son of the woman, feed and clothe him, and give him a common-school education, and a horse, bridle, and saddle when he became twenty-one years of age; the son became of age in December, 1874, and brought suit in 1880, alleging a breach of the covenant, in that the person so agreeing had failed to give him a common-school education: *Held,* that the plaintiff could not maintain an action of covenant on the agreement set out, he not being a party or privy to the same, but a mere stranger, and the case was properly dismissed on demurrer. 1 Chitty, Pl. 20, 3, and cit."

This court has recognized certain exceptions to the general rule, as declared in the Civil Code (1910), § 5516. In the early case of *Bell* v. *McGrady,* 32 *Ga.* 257, it appears that Gardner and Kendrick, partners in a livery-stable business, sold all the property of the firm to McGrady, he agreeing in writing to pay all the firm's indebtedness, and on such consideration received from the firm all its assets. Bell held a note which the firm owed. The firm and both partners were insolvent, and McGrady refused to pay the note. Bell brought an equitable action against the members of the firm and McGrady. The trial judge dismissed the

bill for want of equity. This court in reversing that judgment held: "We think the bill in this case well brought. McGrady, by virtue of his agreement with Gardner & Kendrick, became trustee to pay their debts. The effects of Gardner & Kendrick were assigned to McGrady to discharge their liabilities, and it was proper for this creditor to go into equity to enforce this agreement in behalf of himself and others." In *Dallas* v. *Heard,* 32 *Ga.* 604, the contract there sued upon was also construed as constituting the promisor trustee for the benefit of the third person or beneficiary, and therefore it was held that a suit in equity might be brought thereon. In *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245), it was held: "Where one person, for a valuable consideration, agrees with another to pay the debts of the latter, under former decisions of this court this alone does not authorize a creditor of the promisee to bring an action at law against the promisor to recover the debt. . . It has not been decided that where a debtor conveys his property to another, and as part of the transaction the purchaser agrees to assume and pay the debts of the vendor, the creditor has no remedy in an equitable proceeding, with proper pleadings and parties. . . If a member of a firm retires, and the remaining partner, or a firm composed of him and another, purchases the interest of the retiring partner and assumes to pay the debts of the old firm, a creditor of the old firm may, in an equitable action to which both the retiring partner and the members of the new firm are parties, enforce the payment of the debt due to him." In that case Mr. Justice Lumpkin cited and discussed practically all of the former decisions of this court, as to the right of a beneficiary of a contract made between two other parties to sue in his own name. This case is cited and the principle ruled therein was applied in *Union City Realty & Trust Co.* v. *Wright,* 138 *Ga.* 703 (76 S. E. 35), where reference is also made to many of the prior decisions of this court. On the same line are the following cases: *Williams Co.* v. *American Tie &c. Co.,* 139 *Ga.* 87 (76 S. E. 675); *Louisville & Nashville R. Co.* v. *Nelson,* 145 *Ga.* 594 (89 S. E. 693); *Morgan* v. *Argard,* 148 *Ga.* 123 (95 S. E. 986). In *Crawford* v. *Wilson,* 139 *Ga.* 654, 661 (78 S. E. 33), it was held: "1. A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and

acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will. 2. Such an equitable suit is maintainable by the child in her own name against the administrators of the obligor." In the opinion it was said: "The statute declares that 'as a general rule' an action on a contract must be brought by a party to it. Civil Code, § 5516. The statutory statement that as a general rule only a party to a contract can enforce it carries with it the implication that there are exceptions to the general rule. The various adjudications of this court on the subject were critically analyzed in Sheppard v. Bridges, supra; and in that case it was held that if a beneficiary of a contract, though not a party to it, stand in a quasi-trust relation to its subject-matter, he may enforce his rights under it in a court of equity with proper parties. The present case is to be differentiated from the cases of Gunter v. Mooney, 72 Ga. 205, and Cooper v. Claxton, 122 Ga. 596 (50 S. E. 399), which concerned suits at law by a child to recover, as for breach of contract made by the parent with a stranger, the stipulated compensation for the child's services. In the present case the subject-matter of the contract was that the petitioner was to be adopted as a child of the promisor, which contract, if it had been consummated, would have given petitioner a beneficial right of inheritance by operation of law, and beyond the express terms of the contract. The suit is in equity; and the changed domestic relation between the foster parent and foster child, together with the right of inheritance under the law, as a result of the changed parental relation, if formal adoption had been consummated under the contract, serves to bring this case within the exception recognized in Sheppard v. Bridges, supra." In several other cases cited in Pair v. Pair (supra), this court has held, that, under certain circumstances, a parol contract for the adoption of a minor child may be enforced in equity, at the instance of the child, with resultant rights to it, where to do otherwise would result in irreparable injury.

It will be seen that the Crawford case and others, relating to contracts adopting or promises to adopt a child, were founded largely on the changed relation or status of the child itself, and there

had been a part performance of the agreement by the party adopting or promising to adopt the child; and the child's right to insist on the contract was derived, not from the contract alone, but from the conduct of the promisor in pursuance of the contract, and the wrong which the child would sustain if the contract were carried out in part and not in whole. See Fry's Specific Performance, § 204.

The facts alleged in the petition in the case at bar do not bring it within any of the exceptions heretofore recognized in any of the decisions of this court. In this case the suit is brought by the beneficiary under an alleged contract made between her father, Jones, and Mrs. Barksdale, the contract not vesting in petitioner any legal interest; and to hold that she could maintain a suit would be in direct conflict with the provision of the Civil Code, § 5516, above quoted. There can be no reason why an exception to the general rule declared by our statute should be made in her favor, in view of the allegations of her petition. To create an exception in her favor would be virtually to abrogate our statute, and to hold that a beneficiary of a contract made between two third persons could sue the promisor thereon, though the beneficiary was in nowise connected with such contract, except to receive as a stranger a benefit thereunder. It is true that the petitioner in the case at bar is the daughter of the promisee in the contract, but, as we have already seen, under the English rule that fact does not constitute an exception to the general rule; and while in Massachusetts it was formerly recognized as an exception to the general rule, such former decisions have been reviewed and overruled by the highest court of that State.

The petitioner in the case at bar, as we have seen, was an utter stranger to the contract between her father, Jones, and Mrs. Barksdale — she furnishing none of the consideration — her relation or status was in no wise changed or affected, nor was any trust created for her benefit under the terms of the contract; for if the promisor, Mrs. Barksdale, became under the terms of this contract the trustee, or quasi trustee, of the petitioner, so as to entitle her to sue for the enforcement of the contract, then in every instance, without exception, where two persons make a contract in which one of them promises to confer a certain benefit upon a third party, the promisor would become the trustee, or quasi

trustee, for the beneficiary, and therefore the latter could sue to enforce the agreement, and the general rule could have no application, and would be entirely abrogated.

As we have seen, the English rule was applied both in cases at law and in equity, and our statutory rule virtually adopting the English rule does not confine the enforcement of the rule to cases at law.

4. The petition should have been dismissed on demurrer, and the further proceeding in the trial was nugatory.

*Judgment reversed. All the Justices concur, except Gilbert, J., dissenting.*