MANGET *et al.-v.* NATIONAL CITY BANK OF ROME *et. al.*

No. 7135.  July 23, 1929.  Rehearing denied August 7, 1929.

*Hall & Jones,* for plaintiff.

*Wright, Wright & Covington* and *Porter & Mebane,* for defendant.

Hines, J.   J. S. Saxon was a cotton-buyer and seller in Rome, Georgia.  In order to secure funds for the purpose of buying cotton, he applied to the National City Bank of Rome for a loan of money, which the bank made.  He and the bank, on September 14, 1926, entered into a contract which recited that he had applied to the bank for a loan of money for the purpose of buying cotton in bales, which the bank was willing to make upon his promises and representations, which will now be stated. Saxon promised to use said funds solely for the purpose of buying baled cotton for resale by him; that when he bought cotton he would store it in cotton warehouse in Rome, where it would be graded, weighed, and insured, and obtain therefor warehouse receipts stating the weight and grade of each bale and that the same was protected by insurance against fire; and that he would deliver said receipts to the bank as collateral security for the note which he was to give the bank for such loan.  He further agreed that the funds loaned him by the bank would be placed on deposit in the bank to his account, and that he would draw against said funds only for the purpose of paying for cotton purchased by him.  It was expressly agreed that each check given on said fund by Saxon should be a representation to the bank that each particular check was given solely for the purchase of cotton, and he agreed that he would not give checks on said fund for any other purpose.  The bank was given by Saxon a special lien on all funds or other property he had on deposit with

or in possession of the bank, to secure said loan, and the express right to appropriate any of such funds when in the bank's judgment an appropriation might be necessary or advisable for the protection of its interests. The bank charged Saxon 5 c. per bale for every bale paid for by it for him, and also charged him 8 per cent. interest on his daily balance due it for money advanced by it in paying for cotton as bought by him. The proceeds of this loan and subsequent deposits made by Saxon in the bank were used by Saxon in buying cotton under the above arrangement.

On December 7, 1927, Saxon bought from L. C. Chestnut one bale of cotton, for the full market price of which he gave his check on said bank. On December 8, 1927, he purchased from A. E. Orr two bales of cotton, for the full market price of which he gave his check on said bank. On December 13, 1927, he purchased from A. J. Rhinehart two bales of cotton, for the full market price of which he gave his check on said bank. He took from each of said persons the warehouse receipt or receipts held by them for said cotton, and pledged said receipts with the bank for the purpose of securing it for the moneys to be paid out on his checks given for the purchase-price of said cotton. The sellers were cotton planters and non-residents of this State. They did not present these checks promptly, but held them from three to five days after receiving them; and when they were presented, payment was declined by the bank.

On November 23, 1927, Manget Brothers Company, a firm composed of D. T. Manget, V. E. Manget, and W. B. Davis, purchased from Saxon twenty bales of cotton; on December 6, 1927, this firm purchased from him twenty-five bales of cotton; and on December 7, 1927, this firm purchased from him twenty-five bales of cotton. This cotton was sold by Saxon for the bank under warehouse receipts which represented cotton purchased by him and paid for by the bank, which receipts had been pledged to said bank by Saxon to secure such payment, and had been turned over by the bank to Saxon for the purpose of selling the cotton as the property of the bank, and to hold the proceeds thereof in trust for it. On the foregoing purchases Saxon delivered to the Manget firm, on December 9, 1927, thirty-four bales of cotton, which included the one bale of cotton purchased by him from Chestnut. Said firm paid Saxon the full price and market value of the thirty-four

bales of cotton, by giving to him a check drawn on the First National Bank of Rome for the sum of $3,575.89, which check he deposited with the National City Bank, which collected it in full, and the proceeds of it were held by the bank at the time of the institution of this suit. On December 10, 1927, Saxon delivered to said firm on said purchases fifteen bales of cotton, which included the two bales of cotton purchased by him from Orr. Said firm gave to Saxon in payment of said cotton its check on the First National Bank of Rome for $1,495.07, which check he deposited in the National City Bank, which the latter bank collected in full, and had the proceeds of it in its possession at the institution of this suit. On December 14, 1927, Saxon delivered to said firm on said purchases thirty bales of cotton, which included the two bales purchased by him from Rhinehart. For said thirty bales of cotton said firm gave to Saxon its check on the First National Bank of Rome for $2,857, which he deposited with the National City Bank, which collected the check and held the proceeds at the time this suit was begun. At the time Saxon gave the checks to said planters he had on deposit in the National City Bank $10,500 available to meet the same, which deposit remained in said bank up to and including December 14, 1927.

On June 13, 1928, each of said planters filed in the city court of Newnan an action in trover against Manget Brothers Company, to recover the value of the cotton which they had sold to Saxon and which he had sold to said firm. Thereupon said firm filed their equitable petition in Coweta superior court against the plaintiffs in the trover suits, the National City Bank, and Saxon, in which they set up the facts hereinbefore stated, and prayed that said trover suits be enjoined, that all parties be required to set up their rights and equities in said equitable suit, that the same be determined therein, that the rights and equities of the parties to this suit be determined and decreed by the court, that in the event said planters are entitled to recover said cotton, or its value, the judgment or decree be so molded as to establish the primary liability of said National City Bank to pay the same, and that petitioners have general relief in the premises. The National City Bank of Rome demurred upon the grounds: (1) The petition sets forth no cause of action. (2) There is no privity between plaintiffs and said defendant, no contractual or other relation existing between

them which would entitle the plaintiffs to maintain an action against it for the recovery of any sum of money. (3) Plaintiffs' cause of action against this defendant is based upon checks drawn by Saxon upon it, and it is not alleged that said checks have been accepted by it, or that the same were drawn upon any special fund; and therefore no right of action exists in the plaintiffs upon said checks, or any other person, as against it. (4) The mere giving of said checks by Saxon does not constitute any transfer of any interest held by him in any deposit had by him with this defendant, and therefore no right of action can exist either in Saxon or the plaintiffs in this case, or any other person, upon said checks. (5) No substantial relief is prayed for against this defendant, and there are no allegations showing it to be a necessary and formal party to this action. (6) No facts are alleged which would entitle plaintiffs to any judgment or decree establishing a primary liability or any other liability in their behalf against this defendant. (7) It does not appear from the petition that the plaintiffs had ever paid to the holders of said checks the amounts due thereon. (8) The plaintiffs have a full, adequate, and complete remedy at law. The court sustained the demurrer, and dismissed the case as to the bank. To this ruling the plaintiffs excepted.

■ "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." Civil Code (1910), § 5516; *Empire State Ins. Co.* v. *Collins*, 54 *Ga.* 376; *Gunter* v. *Mooney*, 72 *Ga.* 205; *Pfeiffer* v. *Hunt*, 75 *Ga.* 513; *Austell* v. *Humphries*, 99 *Ga.* 408 (27 S. E. 736); *Hawkins* v. *Central Ry. Co.*, 119 *Ga.* 159 (46 S. E. 82); *Guthrie* v. *Atlantic Coast Line R. Co.*, 119 *Ga.* 663 (46 S. E. 824); *Cooper* v. *Claxton*, 122 *Ga.* 596 (50 S. E. 399); *Fairchild* v. *Hartsfield*, 144 *Ga.* 348 (87 S. E. 285); *Shropshire* v. *Rainey*, 150 *Ga.* 566, 570 (104 S. E. 414). To this general rule there are exceptions. Where the purchaser of the assets of a firm agreed to pay their debts, a creditor of the firm could, by bill to which the partners and purchaser were parties, enforce this agreement for his benefit. *Bell* v. *McGrady*, 32 *Ga.* 257. Where a married woman, having separate property and being indebted to another by note, conveyed her separate estate to others in con-

sideration of their agreement to pay her an annuity for life and all debts against her separate property, this agreement was held enforceable in equity by her creditors. *Dallas* v. *Heard,* 32 *Ga.* 604. So where a vendee in a bond for title, for a valuable consideration, transfers the bond, together with his interest in the land, to a third person, who assumes and agrees to pay the balance of the purchase-money, the vendor, not being a party to the contract, can not in an action at law enforce the contract of such third person; but the vendor may maintain an equitable action against the vendee and his transferee, to recover a judgment for the balance of the purchase-money, with a special lien upon the land. *Morgan* v. *Argard,* 148 *Ga.* 123 (95 S. E. 986) ; *Dunson* v. *Lewis,* 156 *Ga.* 692, 702 (119 S. E. 846). It is now well settled in this State that a purchaser of lands, who assumes the payment of an encumbrance thereon as a part of the consideration of his purchase, is liable in equity to the holder of such encumbrance under such agreement, or to his vendor in case the latter has to pay off the encumbrance. The assignee of a security deed, when the debt thereby secured has been assumed by the purchaser, can enforce the liability of the purchaser just as the mortgagee might have done had there been no assignment. Clark *v.* Fisk, 9 Utah, 94 (33 Pac. 248) ; 2 Jones on Mortgages (7th ed.), § 741. Where a grantee in a deed assumes payment of a mortgage or other encumbrance on the land conveyed, the successor in title of the grantor under the latter's warranty deed succeeds to the benefit of such agreement. Jager *v.* Vollinger, 174 Mass. 521 (55 N. E. 458). Where the purchaser of a portion of a tract of land assumes and agrees to pay an encumbrance upon the entire tract, as a part of the consideration of his purchase, and his vendor afterwards sells the remainder of the tract to a third person who pays the full purchase-price of said remaining portion to the seller, the agreement of the first purchaser inures to the benefit of the second purchaser; and upon breach of such agreement the first purchaser becomes liable in equity to the second purchaser for such damages as are sustained by the latter in consequence of such breach. *Reid* v. *Whisenant,* 161 *Ga.* 503 (131 S. E. 904, 44 A. L. R. 599).

Where the promise of benefit to the third person creates a trust in his favor, he may enforce the trust in a court of equity. Where one pays money to another for the use of a third person, the latter

may sue the holder for it. Where one through a contract with another has obtained money or other property which rightfully belongs to a third person, the latter may sue therefor in his own name, as the law creates both the privity and the promise. *Shropshire* v. *Rainey*, supra.

Where a cotton-buyer and a bank enter into an arrangement and contract by which the buyer buys cotton from planters, takes their warehouse receipts for cotton purchased, gives to the sellers checks on the bank for the payment of the purchase-money, pledges such warehouse receipts with the bank to secure it for money to be paid by it on such checks, the bank having agreed under such arrangement and contract to pay such checks, the bank in equity holds the cotton represented by such receipts and the proceeds thereof in trust for the purpose of paying the purchase-price of the cotton; and where the bank sells the cotton to third persons, receives the proceeds thereof, and fails to pay the sellers the price thereof represented by said checks, in equity it holds such proceeds in trust for the persons so buying the cotton; and if they, upon being sued by the planters in trover therefor on the theory that the bank had no title to the cotton because the sale was on a cash consideration, are compelled to pay the planters the value, a court of equity will enforce the trust in their favor. Trusts of every kind, not generally cognizable at law, are peculiar subjects of equity jurisdiction. Civil Code (1910), § 3779.

■ When cotton is sold by planters to a buyer on a cash sale, no title to it passes to the buyer until fully paid for, although it may be delivered to the buyer. Civil Code (1910), § 4126. Bank checks are not payment until themselves paid. § 4314. So if Saxon bought the cotton from the planters for cash and gave them his checks on the bank in payment therefor, no title to the cotton passed to him when the bank refused payment of his checks and the cotton was not otherwise paid for. In such event, when Saxon pledged this cotton to the bank under the arrangement between him and the bank, hereinbefore referred to, and the bank failed to pay his checks given for the purchase-price thereof, no title to the cotton passed to the bank. In these circumstances the planters brought suits in trover for the recovery of their cotton. If they succeed in these suits, the bank will be liable over to the petitioners for the value of this cotton sold by it to them. While the peti-

tioners could vouch the bank in to defend the trover suits in the city court of Newnan (Civil Code (1910), § 5821), this remedy at law does not afford to them a full, complete, and adequate remedy. This course would subject the petitioners to a circuity of actions. Besides, petitioners could not set up the trust with which we have dealt in this opinion. In these circumstances the present suit was well brought to enjoin the trover suits in the city court, to enforce the trust to which we have referred, and to settle the rights of the various parties growing out of this transaction.

■ The deposits by Saxon in the bank were special deposits, being expressly made for the purpose of the payment of his checks given in payment for cotton bought by him from planters and merchants. This being so, his checks amounted to an equitable assignment of so much of these deposits as was necessary to pay them. But as the petitioners have not, by payment or otherwise, become the owners of these checks, they are not in a position to enforce their payment on the ground that they were equitable assignments of the deposits made by Saxon. Their right to proceed in the present action depends upon the principles announced in the foregoing divisions of this opinion. Applying these principles, the court erred in sustaining the demurrer of the bank, and in dismissing that defendant from the case.

*Judgment reversed. All the Justices concur.*