NATIONAL CITY BANK OF ROME *v.* MANGET *et al.*

No. 7829. October 17, 1930.

*Wright & Covington* and *Barry Wright,* for plaintiff in error.

*Hall & Jones* and *Porter & Mebane,* contra.

GILBERT, J. The case made by the pleadings was fully stated when the judgment of the trial court sustaining the demurrers of the National City Bank of Rome, and dismissing the suit, was reversed. *Manget v. National City Bank of Rome,* 168 *Ga.* 876 (149 S. E. 213). On the trial of the case the court directed, and the jury found, in favor of Orr, Chestnut, and Rhinehart, the plaintiffs in the trover suits brought by them against Manget Brothers Company, specified sums of money, with interest and costs; that the National City Bank is primarily liable to pay these sums, and that Manget Brothers Company is secondarily liable to pay the same. National City Bank of Rome moved for a new trial. The exception now is to an order overruling that motion. Four grounds were added by amendment to the motion for new trial containing the

general grounds. These four grounds complain that "the evidence in said case wholly fails to support the allegations of the petition," in the particulars stated below as to each ground; that said allegations of the petition being essential to a recovery by the plaintiffs, the failure to establish them by proof rendered the verdict as directed by the court "contrary to law, contrary to the evidence, and without evidence to support" it. There is no exception to the direction of the verdict. The motion for a new trial raises only the question of the sufficiency of the evidence to support the verdict. The particulars in which it is contended the allegations are not supported by proof are:

1. That the bank had agreed and contracted with its codefendant, Saxon, to pay all checks drawn upon it by Saxon for cotton purchased by Saxon, and that the warehouse receipts purchased by Saxon from the cotton planters were deposited by him with the bank to secure it for the money to be paid by the bank upon checks drawn by Saxon. On this issue the following evidence was introduced: Contract in writing between the Bank and Saxon, reciting "that the borrower [Saxon] has made application to the bank for a loan of money for the purpose of buying cotton in bales, and the bank being willing to lend . . the money as applied for, upon the promises and representations of the borrower as herein set out, constituting the consideration of the loan. . . The borrower represents that he will and promises to use said funds solely for the purpose of buying baled cotton of the commercial quality, which cotton is to be bought by the borrower as a merchant for resale. . . As soon as said cotton is bought, the borrower represents that he will and promises to store the said cotton in one of the recognized warehouses located in the city of Rome, Georgia, where said cotton will be graded, weighed, and insured against fire, and obtain a warehouse receipt from the warehouseman for the said cotton, . . and that said receipts will be delivered on demand by the buyer to the bank as collateral security for the note which is to be given by the buyer to the bank for the loan of money herein mentioned. . . The funds when loaned by the bank shall be placed on deposit in the bank to the account of the borrower, and the borrower agrees that he acknowledges such loan and will check or draw against same only for the purpose aforesaid; and it is expressly agreed that each check given on said fund by the borrower shall be a

representation to the bank that each particular check is given solely for the purchase of cotton as aforesaid, and the borrower hereby promises and represents that he will not give checks on said fund for any or different purposes. . . The bank is hereby given by the borrower a special lien on all funds or other property the borrower has on deposit with or in possession of the bank, to secure the said loan; and the bank is given express right to appropriate any of such funds when its judgment such an appropriation may be necessary or advisable for the protection of its interest."

Saxon testified, as to the manner in which the business was transacted: "I bought cotton from a planter. I made him out a bill and gave him a check on the National City Bank for the cotton, and he gave me the warehouse receipts. If I held these receipts over nighttime, I carried them to the bank, to the National City Bank, and deposited them as pledges. They held these receipts until next morning, or may be two or three mornings. When I got ready to sell my cotton, I went to the National City Bank for the receipts, for the warehouse receipts, and they gave them to me. I gave them a trust receipt. I took this cotton and delivered it to those I sold to, and they gave me a check for it." The trust receipt referred to, introduced in evidence, was as follows: "Received in trust from the National City Bank of Rome, Georgia, warehouse receipt for 43 bales cotton (if specifically described, see reverse side of this receipt), which cotton receipts are the property of The National City Bank of Rome, Georgia, specified in my note payable to said bank. I hereby agree to hold the said receipts in trust for them, and as their property, with liberty to sell such receipts or the cotton represented by same for their account, for cash only; and in case of sale, I further agree to receive and hold the proceeds in trust for said bank, and to hand the proceeds to said bank on date of sale. Receipts or proceeds of same to be turned over to National City Bank of Rome, this day." Saxon testified that the written contract introduced was the only one he had with the bank; that he bought the cotton involved from Orr, Rhinehart, and Chestnut, and sold it to Manget Brothers; that he carried the check given him in payment by Manget and deposited it in the bank; but that the bank refused payment on the checks which he had given to Orr, Rhinehart, and Chestnut for the cotton.

2. That the evidence failed to show that any contract had

been made between the bank and its codefendant, Saxon, for the benefit of the cotton planters, other codefendants, or for the benefit of Manget Brothers Company, but on the contrary shows only a contract between the bank and Saxon, in which the bank was not obligated or bound in any way to honor checks drawn by Saxon upon it for the purchase of cotton, unless funds were available to the account of Saxon at the time said checks were presented; and the proof failed to support the allegation that there existed between the bank and Saxon a contract by which the bank was obligated to honor all checks drawn upon it by Saxon for the purchase of cotton.

On that question there was evidence as follows: Saxon testified, as already stated, that the contract in writing, above mentioned, was the only one he had with the bank; that "this cotton belonged to them until they got their money for it. They held it as security for the debt. If I had paid them all I owed, . . the cotton receipts held by them would have been mine as I paid for them. . . These cotton receipts and all my balance were held as collateral security by the bank; and in order to handle this cotton at all, I had to get this cotton out under this trust receipt. . . They allowed me to do business in my name." Cothran, vice-president of the bank, testified that the writing was the only contract they had with Saxon; that "there were no restrictions on the account kept there by the bank, any more than any other checking account— other than provided by the contract. . . Mr. Saxon had the right to check against that account subject to this contract. . . Mr. Saxon would draw checks on this account for the purpose of purchasing cotton. We did not retain any control over Mr. Saxon in the sale of this cotton when these receipts would be sent bank [back] under this trust agreement. The only requirement was he should deliver the proceeds of those receipts, if he sold it. If not, the receipts were then to be returned to the bank. There was no contract or agreement between Mr. Saxon and the bank on what basis he was to have in selling this cotton. Independent of this contract he was not to act as agent for the bank in selling cotton, because the bank did not consider it was its cotton. It held simply as security." This witness testified further that when the bank found its collateral was insufficient to cover its loan, it applied Saxon's entire balance upon his debt, and this resulted in turning down the checks which were given by Saxon to Orr, Rhinehart,

and Chestnut for the cotton purchased from them, which was sold by Saxon to Manget Brothers Company, and the proceeds of which were deposited in his account.

3. That the evidence failed to support the allegations that after the sale by Orr, Chestnut, and Rhinehart of cotton to Saxon, the receipts therefor were deposited by Saxon with the bank and then sold by the bank; but that on the contrary the proof showed that neither the cotton nor the receipts therefor were sold by the bank, but was sold by Saxon. On this question Saxon testified: "These particular receipts [the ones for the Orr, Rhinehart, and Chestnut cotton] as to their ever having gone in the bank, I think they did, but I won't be positive." He also testified, as already stated, that the proceeds of the sale of this cotton were deposited to his account in the bank.

4. That the evidence failed to support the allegation that Saxon had made deposits in the bank expressly for the purpose of paying his checks given in payment for cotton from Orr, Chestnut, and Rhinehart, but on the contrary it disclosed that such deposits were made by Saxon generally to his account, without reference or agreement to said checks drawn by him in favor of Orr, Rhinehart, and Chestnut or any other persons; and that no contract or agreement of any character existed between Saxon and the bank with reference to the deposit of said checks, other than that they were deposited upon general account to the credit of Saxon. On this question Saxon testified that the proceeds of the particular cotton in question were deposited to his account. He did not testify that any money was deposited by him expressly for the purpose of paying the checks which he gave Orr, Rhinehart, and Chestnut.

We think that the entire controversy may be summed up as follows: The contract between Saxon and the bank obligated the bank to honor checks drawn by Saxon for the purchase of cotton, under the conditions named therein. The essential condition was that when Saxon drew a check on the bank, it must be for the purchase of actual cotton, and the warehouse receipts, or the proceeds if the cotton were sold, must be delivered to the bank as a condition for the payment of the checks. It is not certain that the bank received the warehouse receipts for the Orr, Rhinehart, and Chestnut cotton. Saxon testified: "I think they did, but I won't

be positive." He testified positively that the proceeds of the sale of this cotton were deposited in the bank to his credit. It was not deposited expressly to pay the checks given to Orr, Rhinehart, and Chestnut. So the jury was authorized to find that the bank received either the warehouse receipts for the specific cotton or the cash proceeds of the sale to Manget Brothers Company. There being no exception to the direction of the verdict, the case will be treated as if the issues of fact were submitted to the jury for determination. The evidence supports the verdict.

*Judgment affirmed. All the Justices concur.*