42306. PARKS v. BRISSEY.

ARGUED SEPTEMBER 7, 1966—DECIDED NOVEMBER 3, 1966.

*Westmoreland, Hall & Pentecost, Robert H. Cleveland, M. K. Pentecost, Jr.,* for appellant.

*Grady E. Rozar,* for appellee.

JORDAN, Judge. ■ In essence the petition alleges that plaintiff rendered valuable services to defendant at his request for which she has received only partial payments in the form of reduced rentals, and she seeks to recover the reasonable value of her services, less credit for the value of the reduced rentals. The petition contains no allegation of any express promise of defendant to pay any specified amount to plaintiff for her services, showing only that she was employed by plaintiff to perform the services of a resident manager of his apartment house. This is precisely the first of the situations contemplated by *Code* § 3-107, and the action is properly termed as an assumpsit on quantum meruit. See *Guyton v. Young,* 84 Ga. App. 155, 158 (65 SE2d 858). Such an action clearly comes under the 4-year limitation of *Code* § 3-706, and is not an action "for the recovery of wages" as the term is used in *Code Ann.* § 3-704, imposing a 2-year limitation on recovery. *Code Ann.* § 3-704

was originally intended to apply to rights accruing to individuals under statutes and acts of incorporation. *Harris v. Smith*, 68 Ga. 461; *Bigby v. Douglas*, 123 Ga. 635, 638 (51 SE 606). The intent of the original enactment is recognized in the 1943 amendment which by its title purports to fix the time on actions "for the recovery of wages, damages or overtime accruing to individuals under statutes." Ga. L. 1943, p. 33. The present case involves a right recognized under common law and codified from the common law. The trial judge did not err in overruling the defendant's motion to strike that part of the plaintiff's petition seeking recovery in excess of two years. See *Cooper v. Claxton*, 122 Ga. 596 (3) (50 SE 399).

■ In Ground 4 of his motion for a new trial the defendant complains that a witness for plaintiff was allowed to testify as to a conclusion and that it was hearsay on his part. This witness testified that the reason plaintiff and her husband returned from a vacation in Florida was because the defendant's wife "was angry that they went off." Conceding that the testimony was a conclusion and hearsay by this witness, it was merely cumulative, as plaintiff had already testified on direct and cross-examination concerning her relationship with defendant's wife, who acted as his agent, and who expressed displeasure when plaintiff left the premises. Plaintiff in her testimony specifically mentioned her trip to Florida, and having received a report in Florida from her agent that "Mrs. Parks had called and she was real upset because we had left town and hadn't told them." The error, if any, in admitting the testimony of the witness was harmless.

■ In Ground 5 of the motion for new trial defendant complains of the refusal of the court to permit him to testify whether his wife reported any agreement she may have made with plaintiff. The question propounded was: "That's what I'm trying to get at. Did Mr. Parks report such discussion?" Counsel objected that the question was leading, and the court refused to permit an answer on the ground that any answer would be hearsay. The question is not leading, and the required answer called for a fact, i.e., whether defendant received a report from his wife of any agreement with plaintiff. The

error was harmless, however, for counsel had previously asked defendant without objection, "Did Mrs. Parks inform you of any agreement she may have reached with Mrs. Brissey?" to which he replied, "She did not."

■ Ground 6 of the motion for new trial is addressed to the refusal of the court to permit a witness, who testified that she was a resident manager for the defendant, and had previous experience as a resident manager, to answer the question, "How would compensation be paid?" Ground 9 is addressed to the refusal of the court to permit the same witness to answer the question, "Mrs. Overman, what is the primary compensation or reason for one becoming a resident manager?" The witness had previously testified that she received free rent and that the reasonable value of her services was "around 40 or 50 dollars a month" for duties similar to those of the plaintiff. The real issue was quantum, not method of payment or reason for engaging in the occupation of resident manager, and in this respect the answers called for by the questions were not directly germane to the issue. The rulings, while perhaps unduly restrictive, were not harmful error.

■ After defendant had answered that he did not know how much money plaintiff had collected for him, counsel for plaintiff asked if he knew that the amount was $88,000, to which he replied in the negative. Counsel objected to the question, the court overruled the objection, and defendant complains in Ground 7 of the motion for new trial that this question prejudiced the jurors' minds by implanting therein the idea that defendant was a man of extreme wealth who was refusing to pay the plaintiff the reasonable value for her services in collecting vast sums of money for him.

The amount suggested by counsel is not unreasonable when compared with evidence already before the jury as to the number of apartments and rooms, the rents charged for them, and the duties of plaintiff in collecting the rents. Such a question was proper on cross examination to determine the nature and magnitude of plaintiff's services. Ground 7 is without merit.

■ In Ground 8 of the motion for new trial defendant complains that the court refused to allow defendant's wife to testify

as to the reasonable rental value of the apartment which plaintiff occupied just before she terminated her services. While the court did restrict Mrs. Parks' testimony in this respect, this was after she had already testified that "It might have been worth more, but I asked $100 a month and I got it," in response to a specific question premised by "[a]t the time Mrs. Brissey left in June. . ." There is no merit in Ground 8 of the motion.

■ This leaves for disposition the rulings on the motion for directed verdict, judgment notwithstanding the verdict, and the general grounds of the motion for new trial. Except for the fact that plaintiff did serve as a resident manager for defendant and did receive a reduction in rent for. the apartment which she occupied while performing the duties of resident manager, the evidence is in sharp conflict in almost every particular.

Plaintiff testified that she met the defendant in 1958 at the hospital where she was employed as a practical nurse and where he practiced as a doctor. He talked to her about the difficulties he was having with people in his apartments. She rented a small efficiency apartment from him and became a part-time manager for two of his buildings, collecting rent and writing receipts, and continued to work as a nurse at the hospital. In August of 1961 she became a full-time manager for defendant. At that time he asked her to take charge of four buildings. He instituted a change from a monthly to weekly basis in the method of collecting rents. She collected rents, handled complaints, and showed apartments to prospective tenants. She testified that she was required to have a telephone at her own expense, and that the reasonable value of her services was $250 per month. She paid defendant $40 per month for the apartment which she occupied. It had a rental value of $60 per month. Even when buildings were rented as a whole, she continued to perform duties such as handling complaints and collecting rent. The defendant on many occasions told her that he was going to pay her for the work she was doing. He kept saying "I will sell any day, and I will take care of you when I sell the apartments." He also told her he would pay her as much as she was making at the hospital or what her services were worth, and that he would pay her as much or more than

she made at the hospital. He was a doctor and should have known how much she made at the hospital.

Defendant testified that he first let plaintiff manage one of the four buildings referred to in her testimony in January, 1963, and that after January, 1964, it was leased to a concern which paid the rental directly to defendant. Plaintiff handled the rentals on another of the buildings for about a year and a half commencing around January 1, 1962, after that it was rented for commercial purposes and the rental was paid directly to defendant. From September, 1960, defendant did not personally handle rentals, but his wife was his agent, and she contacted plaintiff from time to time. Defendant made no agreement with plaintiff, and his wife did not inform him of any agreement she made with plaintiff. Defendant did tell plaintiff that defendant's wife was his agent. He never agreed to pay plaintiff $250 per month and never received any demand from plaintiff. He did not know how much money plaintiff collected for him. He did not remember seeing plaintiff while she was at the hospital. He did remember that his wife made some arrangement with plaintiff. He received the benefits and proceeds from the rentals.

Defendant's wife testified that she had managed the properties her husband owned commencing about 1950, when he owned two buildings. After that he acquired two other buildings. She had someone living on the premises to assist her and made all arrangements with that person. She became acquainted with plaintiff either in August or June of 1958, when plaintiff moved into one of defendant's apartments. About October or November, 1960, this witness made an agreement with plaintiff with respect to managing the apartments. Plaintiff was to show the apartments to prospective tenants, collect rents, instruct a maid about cleaning various apartments, notify witness of necessary repairs, keep the keys, and keep the grounds clean. Mrs. Parks' testimony also indicates that this agreement or another was made around October, 1961, at which time plaintiff agreed to pay $12.50 per week or $50 per month for an apartment, and was responsible for managing two of defendant's buildings. Plaintiff paid $50 per month. The apartment had previously

rented for $18.50 per week and witness considered that the reduced rental would compensate plaintiff for her services. The following year plaintiff remarried and moved into another apartment. Witness entered into a further agreement with plaintiff whereby plaintiff received an apartment rent-free but paid $25 per month for utilities and assumed responsibilities for three buildings. This agreement was reached around the first of January, 1962. The apartment she occupied would have rented for $100 per month. Later on, about January, 1963, plaintiff accepted the management of a fourth building. Plaintiff continued to pay $25 a month for utilities. About July 1, 1963, defendant rented one of the buildings to a single tenant, and plaintiff agreed to continue performing services for three buildings and pay $40 a month for utilities. This arrangement continued until she left. She commenced paying $40 a month after September 1, 1963. After January 1, 1964, plaintiff managed two apartments but otherwise the arrangement was the same.

The testimony of these witnesses, while conflicting, is supported in some particulars by documentary evidence and the testimony of other witnesses. The evidence as a whole did not demand a verdict for either party, presented issues properly for resolution by a jury, and does support a verdict for plaintiff. The trial judge did not err in refusing to direct a verdict for defendant, in refusing to grant judgment for defendant notwithstanding the verdict, and in refusing to grant a new trial on the general grounds of the motion.

*Judgment affirmed. Bell, P. J., and Eberhardt, J., concur.*